**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| AMUNIQUE LOVE | § | |
| | § | |
| *Plaintiff,* | § | Civil No. |
| V. | § | |
| | § | |
| APACHE CORPORATION and | § | |
| APA CORPORATION | § | |
| | § | |
| *Defendants.* | § | **JURY TRIAL DEMANDED** |

---

**PLAINTIFF'S ORGINAL COMPLAINT**

---

COMES NOW, Plaintiff, Amunique Love (herein referred to as "Plaintiff" or "Ms. Love") and files this Original Complaint against Defendant Apache Corporation (referred to herein as "Defendant Apache") and Defendant APA Corporation (referred to herein as "Defendant APA") (collectively referred to herein as "Defendants") and would respectfully show this Court as follows:

**I.
JURISDICTION AND VENUE**

1.1    This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 because it arises under the laws of the United States, including Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e and The Americans with Disabilities Act under 42 U.S.C. § 12112.

1.2    Venue is proper in this Court because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district under the Southern District of Texas, and the unlawful employment practices alleged in this case occurred in the Southern District of Texas.

## II.
## PARTIES

2.1     Plaintiff is a citizen of the State of Texas and a resident of Harris County, Texas.

2.2     Defendant Apache Corporation is a Delaware corporation that regularly engages in business in the State of Texas and has its principal place of business in this state. Defendant Apache Corporation may be served with process by serving its registered agent, C T Corporation System at 1999 Bryan St., Suite 900, Dallas, Texas 75201, or wherever it may be found.

2.3     Defendant APA Corporation is a Delaware corporation that regularly engages in business in the State of Texas and may be served with process by serving its registered agent, C T Corporation System at 1999 Bryan St., Suite 900, Dallas, Texas 75201, or wherever it may be found.

## III.
## MISNOMER/ALTER EGO

3.1     In the event any parties are misnamed or are not included herein, it is Plaintiff's contention that such was a "misidentification," "misnomer" and/or such parties are/were "alter egos" of parties named herein. Alternatively, Plaintiff contends that such "corporate veils" should be pierced to hold such parties properly included in the interest of justice.

## IV.
## FACTS

4.1     Ms. Love is an African-American ("Black") female who is dark in skin tone with Attention Deficit Hyperactivity Disorder ("ADHD"). Ms. Love's stellar achievements within the sector of Diversity Equity & Inclusion ("DE&I") led her to be hired for the role of Supplier Diversity Lead for Defendant Apache, located at 2000 Post Oak Blvd. in Houston, Texas.

4.2     Defendant Apache is a worldwide oil and gas company that employs thousands of people across the nation as a single integrated enterprise with Defendant APA, the holding company of Defendant Apache.

4.3     During Ms. Love's employment, Ms. Love made reasonable accommodation requests related to her ADHD. Specifically, she requested a translating, read-aloud computer feature or comparable alternative—which Ms. Love informed had available options for free through Google Chrome's offered extension. Ms. Love initially made her request to her immediate supervisor at the time, Brenda Udunna ("Udunna"), who informed Ms. Love to submit her request to an employee in Defendant Apache's information technology department ("I.T.") to fulfill her reasonable accommodation request. As directed, Ms. Love submitted her reasonable accommodation request to I.T. via Jonathan Jenkins ("Jenkins"), a non-Black I.T. employee of Defendant Apache. While knowing that Ms. Love's request was to accommodate her disability, Jenkins denied her request, refused to provide any alternatives, asked Ms. Love whether she even had a disability, and advised that Defendant Apache only provides accommodations to women who are pregnant. Ms. Love reported the outcome to Udunna and Human Resources representative Veronica Guiton ("HR Guiton"), who confirmed the veracity of the same and informed Ms. Love that Jenkins would be reprimanded and that Ms. Love's accommodation request was being fulfilled. Instead, Jenkins continued to harass Ms. Love through intimidation and demands that she reply to him and accept his latter apology regarding his comments on her disability, which he loudly stated in the presence of other employees. These acts violated Defendant Apache's policies, including its I.T. "Acceptable Use Policy" and "Harassment Policy."

4.4     Throughout her employment, Defendant Apache's Human Resources, I.T., and upper-level management employees communicated to Ms. Love that good faith efforts were being

made to address and fulfill her accommodation requests that were allegedly in process, which Ms. Love relied upon. During this time, Ms. Love struggled to perform her job duties without any accommodation for her disability being provided by Defendants. This violated Defendant Apache's policies.

4.5     One of Ms. Love's primary job duties was in relation to Defendant Apache's company-wide initiative related to transparency and integrity pertaining to DE&I. This initiative followed prior claims of discrimination and improprieties against Defendant Apache in the recent years before Ms. Love's employment. At the beginning of Ms. Love's employment with Defendant Apache, Defendants gave Ms. Love the new required duty to solely execute this initiative within a matter of mere months. Further, Defendants barred all qualified employees, company-wide, from receiving their annual monetary bonus if Ms. Love failed to do so. Ultimately, after spending numerous days and nights working outside of her scheduled shift, Ms. Love managed to still meet the goal at 100%, which came at the expense of her disability being compromised, mocked, and unknowingly ignored. This violated Defendant Apache's policies.

4.6     By 2023, Ms. Love was under the new supervision of Sara Robicheaux ("Robicheaux"), a non-Black female, who, along with other non-Black superiors, mocked at Ms. Love as being "dark" in skin tone. At the time, Ms. Love and Ms. Udunna (both dark-skinned African-Americans) were the two members of the department. Ms. Robicheaux, who transferred from a related department, engaged in loud, mocking conversations related to Ms. Love's dark skin tone while standing outside of Ms. Love's office. These discussions included comments where Rachel Adams, an employee of Defendant Apache, loudly conversed with Robicheaux outside of Ms. Love's office, referring to Ms. Love with Ms. Udunna as being "the dark side," as Robichaux

laughed and encouraged the discriminatory remarks. This violated Defendant Apache's policies, including its "Equal Employment Opportunity Policy."

4.7    Similarly, Ms. Robichaux boasted of her seniority over Ms. Love when meeting with Ms. Love, where Robicheaux quoted hip-hop lyrics of Black artists to make the analogy, asking Ms. Love directly if she understood such phrases better.  During Ms. Love's subsequent meeting with non-Black upper-level colleagues, Ms. Love was then publicly instructed by upper-level non-Black colleagues of Defendant Apache to refrain from speaking about DE&I initiatives for Defendant Apache, which was an expectation given for her role. This violated Defendant Apache's policies.

4.8    Ms. Love additionally made Ms. Robichaux aware of her disability and pending accommodation request for the performance of her job duties, while discussing issues with Ms. Robichaux regarding monetary funds that appeared to not be accurately reported in the system by others for Defendant Apache, pursuant to federal guidelines. The viewing of the system that appeared to show these issues were a part of Ms. Love's duties; however, in response, Ms. Robicheaux informed Ms. Love that she was barred from communicating with anyone from Audit about the matter. Additionally, and while being aware of Ms. Love's disability, Ms. Robicheaux gave Ms. Love an alternative job duty involving reading, analyzing, comparing, and calling hundreds of persons from a listserv (with only the assistance of available lower-level minority staff). In efforts to confirm whether Ms. Love was completing the task, the listserv was imbedded with fake contact information of other colleagues in relation with Ms. Robicheaux whose phone numbers would ring when Ms. Love would contact them. The task additionally required Ms. Love to also read and analyze international communications and information that were sent to Ms. Love

in foreign languages that Defendants were aware that Ms. Love did not speak. This violated Defendant Apache's policies, including its "Harassment Policy."

4.9     When Ms. Love reported the aforementioned discriminatory issues and violations to HR Guiton and requested the status of her reasonable accommodation that was stated to still be in process, Ms. Love was advised to maintain a "keep your head down" approach of not reporting these matters if she wanted to remain employed with Defendant Apache. Mere days later, without reason or prior warning given, Ms. Love was terminated from employment with Defendant Apache at the additional approval, request, and/or authorization of Ms. Robicheaux.

4.10    The immediate termination of Ms. Love's employment by Defendant Apache was unfathomable by Ms. Love who had never received any type of prior corrective action, performance improvement plan, or subpar evaluation that was less than comparable to others. Notably, Ms. Love's work was even complimented during the termination meeting for which no reason was given for her termination.

4.11    As Defendants were aware, Ms. Love had a stellar reputation and work ethic during her employment with Defendant Apache. Specifically, she was the primary reason behind all qualifying employees receiving their annual bonus, she facilitated various DE&I initiatives that Defendant Apache sought but had not previously accomplished, she was the catalyst to grow Apache's local and national DE&I relationships, and she continually met and exceeded goals. Comparably, and in addition to Defendant Apache unexpectedly terminating Ms. Love without reason, it did so in a manner that was coupled with an immediate deactivation of Ms. Love's enrolled medical benefits that were necessary for her ongoing medical monitoring of her disability, of which Defendants were aware. Further, in awareness of its various violations, Defendants repeatedly requested that Ms. Love sign a Settlement Agreement and accept a five-figure payment

from Defendant Apache, in exchange for Ms. Love's silence on the subject matters described herein, which Ms. Love refused. Shortly after Ms. Love's termination, Defendant Apache hired a non-Black female without disabilities to fill the role that Ms. Love was terminated from.

4.12    As a direct result of Defendants' illegal and volatile behaviors and acts, Ms. Love has had to undergo professional treatment through counselors and others, suffering with ongoing pecuniary and non-pecuniary losses that are reasonably anticipated to continue through the longstanding future.

## V.
## CAUSES OF ACTION

**A.    RACE AND COLOR DISCRIMINATION, IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C § 2000e**

5.1    Plaintiff incorporates by reference all of the above facts.

5.2    Defendants' discriminatory conduct against Ms. Love, an African-American dark-skinned female, constitutes a violation of Title VII, which prohibits discrimination in employment based on race and color. *See* 42 U.S.C. § 2000e-2(a)(1) and 42 U.S.C. § 2000e-2(a)(2).

5.3    Plaintiff was subject to daily insults, comments, and remarks that created a hostile work environment, due to Plaintiff's race and color nonconformity, while additionally being deprived of opportunities to speak openly regarding her role in the diversity sector. This treatment was severe and/or pervasive and affected the terms and conditions of Ms. Love's employment. Management was aware of the harassment, while also participating directly and/or indirectly, failing to take sufficient action to stop it.

**B.    DISABILITY DISCRIMINATION IN VIOLATION OF AMERICANS WITH DISABILITIES ACT ("ADA") 42 U.S.C. § 12112**

5.4    Plaintiff incorporates by reference all of the above facts.

5.5 Defendants' discriminatory conduct against Ms. Love, a disabled individual with ADHD, constitutes an ADA violation, which prohibits discrimination on the basis of disability. *See* 42 U.S.C. § 12112(a) and 42 U.S.C. § 12112(b)(5)(A).

5.6 Defendants' discriminatory conduct in misleading Ms. Love regarding its alleged efforts to fulfill her reasonable accommodation request and provide reasonable accommodations for Ms. Love violates the ADA.

5.7 Plaintiff was subject to daily insults, comments, remarks, harassment, and overbearing workloads and requirements that created a hostile work environment, due to Plaintiff's disability, while additionally being deprived of reasonable accommodations to fulfill her role in a way that did not compromise her health. This treatment was severe and/or pervasive and affected the terms and conditions of Ms. Love's employment. Management and HR were aware of same, yet failed to take sufficient action to stop it.

**C. RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C § 2000e**

5.8 Plaintiff incorporates by reference all of the above facts.

5.9 Title VII of the Civil Rights act make unlawful an employment practice for an employer to discriminate against any of its employees for opposing unlawful employment practices by this subchapter. *See* 42 U.S.C. § 2000e(3)(a).

5.10 Plaintiff engaged in protected conduct when she complained repeatedly of the discriminatory behaviors, opposed engaging in falsely reporting funds to the federal government, and reporting the same to management and HR. She suffered an adverse action after she was fired within days of the same, which constitutes retaliation.

## VI.
## DAMAGES

6.1     Plaintiff seeks damages against Defendants, jointly and severally, recovering all damages allowed by law, pre-judgment and post judgment interest as allowed by law, punitive damages, costs of court, and such other and further relief, both general and special, at law or in equity, including but not limited to the following:

**Compensatory and Equitable Relief**

6.2     Plaintiff sustained and seeks actual damages, including but not limited to pecuniary losses, back pay, front pay, lost benefits, and future pecuniary losses.

6.3     Plaintiff sustained and further seeks recovery for her emotional pain and distress, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses for which she is entitled to recovery under her causes of action.

6.4     Plaintiff is also entitled to and seeks declaratory relief that the violations referenced herein occurred and equitable relief in the form of an injunction against future discrimination or retaliation.

**Attorney's Fees**

6.5     Plaintiff is also entitled to and seeks attorneys' fees, interest, and costs of court for services rendered in this cause.

**Exemplary Damages**

6.6     Plaintiff is also entitled to and seeks punitive damages because Defendants engaged in a discriminatory and/or retaliatory practice with malice and/or with reckless indifference to the federally protected rights of Plaintiff, an aggrieved individual. Further, Plaintiff is entitled to the maximum award of punitive damages under 42 U.S.C. § 1981a(b)(3)(d), pursuant to Defendant Apache's violations under 42 U.S.C. § 1981a(a) and 42 U.S.C. § 1981a(b).

# VII.
## PRESERVING EVIDENCE

7.1    Plaintiff previously requested and demanded of Defendant Apache that it preserve and maintain all evidence pertaining to any claim or defense related to the matters giving rise to Plaintiff's claims and resulting there from, including, but not limited to: videotapes, employee logs, accident reports, incident reports, maintenance reports, photographs, computer generated media, inspection reports, emails, electronic messages, letters, memos, employee materials, training materials, and other documents. Plaintiff hereby further requests and demands that Defendants preserve and maintain all evidence pertaining to any claim or defense related to the matters giving rise to this suit and the damages resulting therefrom, including, but not limited to, those previously demanded and referenced above. Defendant Apache's failure to maintain such items will constitute "spoliation" of the evidence.

# VIII.
## RESERVE THE RIGHT TO AMEND AND SUPPLEMENT

8.1    These allegations against Defendants are made acknowledging that investigation and discovery, although undertaken, are continuing in this matter. As further investigation and discovery are conducted, additional facts are anticipated to be uncovered that may and probably will necessitate further, additional, and/or different allegations. The right to amend or supplement is expressly reserved.

# IX.
## JURY DEMAND

9.1    Plaintiff hereby demands a trial by jury.

# X.
# PRAYER

10.1    For the reasons discussed herein, Plaintiff prays this court cites Defendants to appear and to answer herein and that Plaintiff have judgment taken against Defendants, jointly and severally, and recover all damages allowed by law, pre-judgment and post judgment interest as allowed by law, punitive damages, costs of court, and such other and further relief, both general and special, at law or in equity, to which Plaintiff may show herself justly entitled.

Respectfully submitted,

THE WALLACE LAW FIRM, PLLC

BELASHIA S. WALLACE
Federal ID No. 3781822
Texas Bar No. 24086710
363 N. Sam Houston Pkwy E., Suite 1400
Houston, Texas 77060
Telephone:  (281) 766-1700
Facsimile:  1-888-685-1831
E-mail:        BWallace@TheWallaceLaw.com
E-service:   Service@TheWallaceLaw.com

**ATTORNEY FOR PLAINTIFF**