**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| AMUNIQUE LOVE § <br> § <br> *Plaintiff,* § <br> V. § <br> § <br> APACHE CORPORATION and § <br> APA CORPORATION § <br> § <br> *Defendants.* § | Civil No. 4:24-cv-00598 <br><br><br><br><br><br><br> **JURY TRIAL DEMANDED** |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff, Amunique Love (herein referred to as "Plaintiff" or "Ms. Love"), timely files this, her First Amended Complaint, pursuant to Fed. R. Civ. P. 15, which permits a party to amend its pleading once as a matter of course if filed within 21 days after service of a motion under Rule 12(b), and further, under Plaintiff's express reservation of right to amend the Complaint (as stated in Plaintiff's Original Complaint). Plaintiff complains of Apache Corporation (herein referred to as "Defendant Apache"/"Apache Corporation") and APA Corporation (herein referred to as "Defendant APA" / "APA Corporation") (collectively referred to herein as "Defendants") and would respectfully show this Court as follows:

## I.
## JURISDICTION AND VENUE

1.1   This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 because it arises under the laws of the United States, including Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e and The Americans with Disabilities Act under 42 U.S.C. § 12112.

1.2     Venue is proper in this Court because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district under the Southern District of Texas, and the unlawful employment practices alleged in this case occurred in the Southern District of Texas.

## II.
## PARTIES

2.1     Plaintiff is a citizen of the State of Texas and a resident of Harris County, Texas.

2.2     Defendant Apache Corporation is a Delaware corporation that regularly engages in business in the State of Texas and has its principal place of business in this state. Defendant Apache Corporation was previously served and has made an appearance in this case.

2.3     Defendant APA Corporation is a Delaware corporation and holding company of Defendant Apache. Defendant APA Corporation regularly engages in business in the State of Texas. Defendant APA Corporation was previously served and has made an appearance in this case.

## III.
## MISNOMER/ALTER EGO

3.1     In the event any parties are misnamed or are not included herein, it is Plaintiff's contention that such was a "misidentification," "misnomer" and/or such parties are/were "alter egos" of parties named herein. Alternatively, Plaintiff contends that such "corporate veils" should be pierced to hold such parties properly included in the interest of justice.

## IV.
## EXHAUSTION OF ADMINISTRATIVE REMEDIES

4.1     On November 29, 2023, the United States Equal Employment Opportunity Commission issued Plaintiff a Notice of Right to Sue with respect to claims against Apache Corporation and Plaintiff's ultimate March 31, 2023 termination from employment. *See* Exhibit A attached. Plaintiff filed this lawsuit within ninety (90) days of receiving her Notice of Right to Sue,

and this lawsuit is, therefore, timely filed (*see* Dkt. 1 – Plaintiff's Original Complaint filed on February 21, 2024; *see also* Dkt. 5 and Dkt. 6 – Proofs of Service executed on Defendants within two days of suit).

## V.
## FACTS

5.1     Ms. Love is an African-American ("Black") female who is dark in skin tone with Attention Deficit Hyperactivity Disorder ("ADHD"). Ms. Love's stellar achievements within the sector of Diversity Equity & Inclusion ("DE&I") led her to be hired and employed on March 21, 2022 for the role of Supplier Diversity Lead for Defendant Apache, located at 2000 Post Oak Blvd. in Houston, Texas. Unfortunately, Plaintiff was ultimately terminated on March 31, 2023.

5.2     Defendant Apache is a worldwide oil and gas company that employs thousands of people across the nation as a single integrated enterprise with Defendant APA, the holding company of Defendant Apache.

5.3     On March 25, 2022, Ms. Love made reasonable accommodation requests related to her ADHD. Specifically, she requested a translating, read-aloud computer feature or comparable alternative—which Ms. Love informed had available options for free through Google Chrome's offered extension. Ms. Love initially made her request to her immediate supervisor at the time, Brenda Udunna ("Udunna"), who informed Ms. Love to submit her request to an employee in Defendant Apache's information technology department ("I.T.") to fulfill her reasonable accommodation request. As directed, Ms. Love submitted her reasonable accommodation request to I.T. via Jonathan Jenkins ("Jenkins"), a non-Black I.T. employee of Defendant Apache.

5.4     A series of continued issues pertaining to Ms. Love's disability remained through the date of her ultimate termination, where Ms. Love reported these matters to HR and was ongoingly given verbal assurances that they were all being worked on and would be resolved. On

March 28, 2022, while knowing that Ms. Love's request was to accommodate her disability, Jenkins denied her request and refused to provide any alternatives. Through the entire month of April 2022 and May, Ms. Love was routed to various IT representatives related to her reasonable accommodation request, which had not been fulfilled. Jenkins then asked Ms. Love whether she even had a disability and informed Ms. Love that Defendant Apache only provides accommodations to women who are pregnant. Jenkins began sending repeated messages to Ms. Love pertaining to her disability, demanded that she reply to him in writing, visiting her private office in person to make the same demands aloud, demanding that she accept his latter apology regarding his comments on her disability, and initiating unscheduled in-person meet-ups to discuss her disability out loud and in the presence of other employees. These acts violated Defendant Apache's policies, including its I.T. "Acceptable Use Policy" and "Harassment Policy."

5.5    On May 18, 2022, Ms. Love reported the outcome to Udunna and Human Resources representative/Senior HR Business Partner, Veronica (formerly Guiton) Cotton ("HR Cotton"). HR Cotton informed Ms. Love that Jenkins would be reprimanded and that Ms. Love's accommodation request was being fulfilled. Jenkins, however, was never reprimanded, and Ms. Love continued to rely on the assurances of HR Cotton that her accommodation requests were being fulfilled and were only taking prolonged time because of the many alleged hoops and approvals necessary for that technological add-on to be applied on her company-issued device. Throughout that time period through the time of termination, Mr. Jenkins and others continued to ongoingly harass Ms. Love through intimidation, which HR Cotton informed Ms. Love to continue to provide that information to only HR Cotton so that she could take care of it all. In accordance with the same, Ms. Love continued to meet with HR Cotton at least once every sixty days to discuss these and other situations also described herein.

5.6     One of Ms. Love's primary job duties was in relation to Defendant Apache's company-wide initiative related to transparency and integrity pertaining to DE&I. This initiative followed prior claims of discrimination and improprieties against Defendant Apache in the recent years before Ms. Love's employment. At the beginning of Ms. Love's employment with Defendant Apache, Defendants gave Ms. Love the new required duty to solely execute this initiative within a matter of mere months. Further, Defendants barred all qualified employees, company-wide, from receiving their annual monetary bonus if Ms. Love failed to do so. Ultimately, after spending numerous days and nights working outside of her scheduled shift for the remainder of the year, Ms. Love managed to still meet the goal at 100%, which came at the expense of her disability being compromised, mocked, and unknowingly ignored. This violated Defendant Apache's policies. As instructed, Ms. Love reported the matters to HR and was assured that it was would be resolved.

5.7     Consistently throughout her employment through the month of her ultimate termination in March 2023, Defendant Apache's Human Resources, I.T., and upper-level management employees communicated to Ms. Love that good faith efforts were being made to address and fulfill her accommodation requests that were allegedly in process, which Ms. Love relied upon. During this time, Ms. Love struggled to perform her job duties without any accommodation for her disability being provided by Defendants, amidst ongoing promises of the same. This violated Defendant Apache's policies.

5.8     Sara Robicheaux ("Robicheaux"), a non-Black female, was given the newest position that entailed supervising Ms. Love. On August 26, 2022, Robicheaux, along with other non-Black superiors, mocked at Ms. Love as being "dark" in skin tone. At the time, Ms. Love and Ms. Udunna (both dark-skinned African-Americans) were the two members of the department.

Ms. Robicheaux, who transferred from a related department, engaged in loud, mocking conversations related to Ms. Love's dark skin tone while standing outside of Ms. Love's office. These discussions included comments where Rachel Adams, an employee of Defendant Apache, loudly conversed with Robicheaux outside of Ms. Love's office, referring to Ms. Love with Ms. Udunna as being "the dark side," as Robichaux laughed and encouraged the discriminatory remarks. This violated Defendant Apache's policies, including its "Equal Employment Opportunity Policy."

5.9     In a subsequent meeting with Ms. Love, Robicheaux quoted hip-hop lyrics of Black artists to make the analogy to work matter, asking Ms. Love directly if she understood such phrases better. During Ms. Love's subsequent meeting with non-Black upper-level colleagues, Ms. Love was then publicly instructed by upper-level non-Black colleagues of Defendant Apache to refrain from speaking about DE&I initiatives for Defendant Apache, which was an expectation given for her role. This violated Defendant Apache's policies. These events took place every month from September 2022 through March 2023, where Ms. Love met with HR on the same.

5.10    Although Ms. Love made Ms. Robichaux aware of her disability and pending accommodation request for the performance of her job duties, Robicheaux then began shifting more assignments to Ms. Love in December 2023 that were unrelated to her role. This resulted in Ms. Love spending numerous days and nights working outside of her scheduled shift for the remainder of the year, which came at the expense of her disability being compromised, mocked, and unknowingly ignored.

5.11    In January 2023, Ms. Love also discussed issues with Ms. Robichaux regarding monetary funds that appeared to not be accurately reported in the system by others for Defendant Apache, pursuant to federal guidelines. The viewing of the system that appeared to show these

issues were a part of Ms. Love's duties; however, in response, Ms. Robicheaux informed Ms. Love that she was barred from communicating with anyone from Audit about the matter. Additionally, and while being aware of Ms. Love's disability, Ms. Robicheaux gave Ms. Love an additional job duty involving reading, analyzing, comparing, and calling hundreds of persons from a listserv (with only the assistance of available lower-level minority staff). In efforts to confirm whether Ms. Love was completing the task, the listserv was imbedded with fake contact information of other colleagues in relation with Ms. Robicheaux whose phone numbers would ring when Ms. Love would contact them. The task additionally required Ms. Love to also read and analyze international communications and information that were sent to Ms. Love in foreign languages that Defendants were aware that Ms. Love did not speak. Ms. Love was required to still perform these tasks through time of her ultimate termination in March 2023. This violated Defendant Apache's policies, including its "Harassment Policy."

5.12    In January, February, and March 2023, Ms. Love had multiple meetings that she initiated with HR to report the continuing and aforementioned matters, where she was ongoingly advised to continue providing information through meetings so that the underlying issues could be resolved. Ms. Love was ongoingly assured that the investigation was near complete.

5.13    In March 2023, following an additional prior meeting on March 9, 2023, where Ms. Love gave detailed accounts to HR of recent events that included her race, disability, and unlawful federal reporting guidelines, she was informed that her accommodation request was being met. It was not met before her termination. Additionally, HR Cotton advised Ms. Love to then start maintaining a "keep your head down" approach of not reporting these matters if she wanted to remain employed with Defendant Apache. The basis presented by HR Cotton was due to Ms. Love being an African-American—which put her in the sector of being a rare hire who could be one

likely to be quickly fired based upon her skin tone alone. Ms. Love was then provided with multiple examples in which that had taken place with other prior diverse persons of Apache who had subsequently been terminated or reprimanded for reporting things that others in non-diverse sectors were not. Ms. Love's final report to upper-level management of questionable federal reporting guideline improprieties warranting their review was on March 30, 2023.

5.14    On the morning of March 31, 2023, without reason or prior warning given to Ms. Love, she was terminated from employment with Apache— 'effective  immediately.' The termination came at the additional approval, request, and/or authorization of Ms. Robicheaux.

5.15    The immediate termination of Ms. Love's employment by Defendant Apache was unfathomable by Ms. Love, as she had never received any type of prior corrective action, performance improvement plan, or subpar evaluation that was less than comparable to others. Notedly, Ms. Love's work was even complimented during the March 31, 2023 termination meeting for which no reason was given for her termination.

5.16    The March 31, 2023 termination of Ms. Love was also strategically facilitated by Defendants to take place at the start of the business day, on the last day of the month, which allowed for it to be coupled with an immediate deactivation of Ms. Love's enrolled medical benefits that were necessary for her ongoing medical monitoring of her disability, of which Defendants were aware. This occurred at a time when Defendants were aware that the immediate termination would place Ms. Love under severe, unexpected, imminent medical and financial constraints that would ultimately, compromise her ability to receive her ongoing ADHD medical care and medications.

5.17    During the March 31, 2023 termination meeting, HR Cotton informed Ms. Love that the only way Defendants would allow Ms. Love to receive further payments or medical

benefits from Defendant Apache was if she signed a Settlement Agreement from Defendants, which had been sent to Ms. Love's personal email minutes prior to the start of the meeting. The Settlement Agreement had already been created by Defendants to be tailored specifically to Ms. Love, wherein it offered an initial five-figure payment and an extension of her medical benefits in exchange for Ms. Love's silence on the violations previously described herein. The Settlement Agreement also contained express waivers of all of Ms. Love's constitutionally protected rights related to her employment, which were listed as to the rights specific to Ms. Love against Apache. Defendants attempted to place Ms. Love under the unwarranted, unethical, and unjust burden of medical and financial constraints that were now imminent.

5.18  During the termination meeting, Ms. Love pled to have her medical benefits extended without additional cost to her or requirement to enter into the Settlement Agreement, as the cash pay price for her medications had risen to nearly four figures for a mere one-month supply. Although the extension of benefits was possible and Defendants knew that such would allow Ms. Love to obtain her disability medication that had already been pre-scheduled for her to pick up at the end of April 2023, Apache rejected Ms. Love's request, referencing the Settlement Agreement as her only option.

5.19  Following Ms. Love's termination, through the ongoing days and weeks in the future through the end of April 2023, Defendants continually and repeatedly made direct requests to Ms. Love that she execute the Settlement Agreement in waiver of all of her constitutionally protected rights pertaining to her employment with Apache, which Ms. Love did not sign.

5.20  Defendants then hired a non-Black female without disabilities to fill the role that Ms. Love was terminated from.

5.21    As Defendants were aware, Ms. Love had a stellar reputation and work ethic during her employment with Defendant Apache. Specifically, she was the primary reason behind all qualifying employees receiving their annual bonus, she facilitated various DE&I initiatives that Defendant Apache sought but had not previously accomplished, she was the catalyst to grow Apache's local and national DE&I relationships, and she continually met and exceeded goals.

5.22    As a direct result of Defendants' illegal and volatile behaviors and acts, Ms. Love has had to undergo professional treatment through counselors and others, suffering with ongoing pecuniary and non-pecuniary losses that are reasonably anticipated to continue through the longstanding future.

## VI.
## CAUSES OF ACTION

**A.  RACE AND COLOR DISCRIMINATION, IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C § 2000e**

6.1    Plaintiff incorporates by reference all of the above facts.

6.2    Defendants' discriminatory conduct against Ms. Love, an African-American dark-skinned female, constitutes a violation of Title VII, which prohibits discrimination in employment based on race and color. *See* 42 U.S.C. § 2000e-2(a)(1) and 42 U.S.C. § 2000e-2(a)(2).

6.3    Plaintiff was subject to daily insults, comments, and remarks that created a hostile work environment, due to Plaintiff's race and color nonconformity, while additionally being deprived of opportunities to speak openly regarding her role in the diversity sector. This treatment was severe and/or pervasive and affected the terms and conditions of Ms. Love's employment. Management was aware of the harassment, while also participating directly and/or indirectly, failing to take sufficient action to stop it.

**B.  DISABILITY DISCRIMINATION IN VIOLATION OF AMERICANS WITH DISABILITIES ACT ("ADA") 42 U.S.C. § 12112**

6.4     Plaintiff incorporates by reference all of the above facts.

6.5     Defendants' discriminatory conduct against Ms. Love, a disabled individual with ADHD, constitutes an ADA violation, which prohibits discrimination on the basis of disability. *See* 42 U.S.C. § 12112(a) and 42 U.S.C. § 12112(b)(5)(A).

6.6     Defendants' discriminatory conduct in misleading Ms. Love regarding its alleged efforts to fulfill her reasonable accommodation request and provide reasonable accommodations for Ms. Love violates the ADA.

6.7     Plaintiff was subject to daily insults, comments, remarks, harassment, and overbearing workloads and requirements that created a hostile work environment, due to Plaintiff's disability, while additionally being deprived of reasonable accommodations to fulfill her role in a way that did not compromise her health. This treatment was severe and/or pervasive and affected the terms and conditions of Ms. Love's employment. Management and HR were aware of same, yet failed to take sufficient action to stop it.

**C.     RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C § 2000e**

6.8     Plaintiff incorporates by reference all of the above facts.

6.9     Title VII of the Civil Rights act make unlawful an employment practice for an employer to discriminate against any of its employees for opposing unlawful employment practices by this subchapter. *See* 42 U.S.C. § 2000e(3)(a).

6.10    Plaintiff engaged in protected conduct when she complained repeatedly of the discriminatory behaviors, opposed engaging in falsely reporting funds to the federal government, and reporting the same to management and HR. She suffered an adverse action after she was fired within days of the same, which constitutes retaliation.

## VII.
## DAMAGES

7.1    Plaintiff seeks damages against Defendants, jointly and severally, recovering all damages allowed by law, pre-judgment and post judgment interest as allowed by law, punitive damages, costs of court, and such other and further relief, both general and special, at law or in equity, including but not limited to the following:

**Compensatory and Equitable Relief**

7.2    Plaintiff sustained and seeks actual damages, including but not limited to pecuniary losses, back pay, front pay, lost benefits, and future pecuniary losses.

7.3    Plaintiff sustained and further seeks recovery for her emotional pain and distress, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses for which she is entitled to recovery under her causes of action.

7.4    Plaintiff is also entitled to and seeks declaratory relief that the violations referenced herein occurred and equitable relief in the form of an injunction against future discrimination or retaliation.

**Attorney's Fees**

7.5    Plaintiff is also entitled to and seeks attorneys' fees, interest, and costs of court for services rendered in this cause.

**Exemplary Damages**

7.6    Plaintiff is also entitled to and seeks punitive damages because Defendants engaged in a discriminatory and/or retaliatory practice with malice and/or with reckless indifference to the federally protected rights of Plaintiff, an aggrieved individual. Further, Plaintiff is entitled to the maximum award of punitive damages under 42 U.S.C. § 1981a(b)(3)(d), pursuant to Defendant Apache's violations under 42 U.S.C. § 1981a(a) and 42 U.S.C. § 1981a(b).

## VIII.
## PRESERVING EVIDENCE

8.1 Plaintiff previously requested and demanded of Defendant Apache that it preserve and maintain all evidence pertaining to any claim or defense related to the matters giving rise to Plaintiff's claims and resulting there from, including, but not limited to: videotapes, employee logs, accident reports, incident reports, maintenance reports, photographs, computer generated media, inspection reports, emails, electronic messages, letters, memos, employee materials, training materials, and other documents. Plaintiff hereby further requests and demands that Defendants preserve and maintain all evidence pertaining to any claim or defense related to the matters giving rise to this suit and the damages resulting therefrom, including, but not limited to, those previously demanded and referenced above. Defendant Apache's failure to maintain such items will constitute "spoliation" of the evidence.

## IX.
## RESERVE THE RIGHT TO AMEND AND SUPPLEMENT

9.1 These allegations against Defendants are made acknowledging that investigation and discovery, although undertaken, are continuing in this matter. As further investigation and discovery are conducted, additional facts are anticipated to be uncovered that may and probably will necessitate further, additional, and/or different allegations. The right to amend or supplement is expressly reserved.

## X.
## JURY DEMAND

10.1 Plaintiff previously requested a trial by jury and paid the requisite fee.

## XI.
## PRAYER

      11.1    For the reasons discussed herein, Plaintiff prays this court require Defendants to answer herein and that Plaintiff have judgment taken against Defendants, jointly and severally, and recover all damages allowed by law, pre-judgment and post judgment interest as allowed by law, punitive damages, costs of court, and such other and further relief, both general and special, at law or in equity, to which Plaintiff may show herself justly entitled.

Respectfully submitted,

THE WALLACE LAW FIRM, PLLC

*/s/ Belashia Wallace*

BELASHIA S. WALLACE
Federal ID No. 3781822
Texas Bar No. 24086710
363 N. Sam Houston Pkwy E., Suite 1400
Houston, Texas 77060
Telephone: (281) 766-1700
Facsimile: 1-888-685-1831
E-mail: BWallace@TheWallaceLaw.com
E-service: Service@TheWallaceLaw.com

**ATTORNEY FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

      I hereby certify that on April 4, 2024, a true and correct copy of this document was served on the following counsel of record via the Court's CM/ECF noticing system and/or via email per agreement of the parties.

Stewart Hoffer
Hicks Thomas LLP
700 Louisiana Street, Suite 2300
Houston, Texas 77002
shoffer@hicks-thomas.com

_____
ATTORNEY FOR PLAINTIFF