**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| AMUNIQUE LOVE | § | |
| *Plaintiff,* | § | |
| | § | Civil No. 4:24−cv−00598 |
| V. | § | |
| | § | |
| | § | |
| APACHE CORPORATION  and | § | |
| APA CORPORATION | § | |
| *Defendants.* | § | **JURY TRIAL** |

## PLAINTIFF'S  RULE 26(a)(2) EXPERT WITNESS DESIGNATIONS AND DISCLOSURES

COMES  NOW, Plaintiff Amunique Love, in the above styled and numbered cause, and (pursuant to Rule 11 agreement between Counsel) serves this, her Expert Witness Designations and Disclosures, pursuant to Federal Rule of Civil Procedure 26(a)(2).

## RETAINED EXPERT

### RESPONSE:

1. **Regina W. Romeo**
   **2531 Judith Resnik Ave.**
   **Sacramento, CA 95834**
   **858-349-5084**

Ms. Romeo is has more than 25 years of experience in HR as a Chief HR Officer, Chief Diversity Officer, Countywide HR Director, manager and analyst in operations specializing in fair labor practice compliance, process improvement and change management. My experience includes evaluating employment practices, policies and workplace discrimination trends.

Plaintiff has retained Ms. Romeo for litigation purposes, and she may be called as an expert witness to give testimony in the form of opinions within the scope of her stated expertise.

Ms. Romeo is qualified as an expert based upon her skills, education, experience, and

Page **1** of **7**

training, and she will offer opinions within her area of expertise as outlined in her curriculum vitae. Ms. Romeo is expected to testify in accordance with her report that is incorporated fully by reference as is set forth herein, including the wrongful termination of Plaintiff by Apache. Ms. Romeo is further expected to testify that Plaintiff's wrongful termination includes the violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e AND 42 U.S.C. § 1981, The Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a). Ms. Romeo is expected to testify regarding the opinions expressed in her report. Plaintiff refers Defendants to Ms. Romeo's report regarding her mental impressions and opinions. In forming such opinions and conclusions, Ms. Romeo will rely upon the reviewed records specified in her report, along with any similar and related supplementations that may be obtained throughout the discovery and litigation process.

A copy of Ms. Romeo's Expert Report is attached as **Exhibit 1** and is hereby incorporated by reference as if fully stated herein. A copy of Ms. Romeo's expert witness case list is attached hereto as **Appendix A.** A copy of Ms. Romeo's CV is attached hereto as **Appendix B**. A copy of Ms. Romeo's Fee Schedule is attached as **Appendix C.**

Plaintiff reserves the right for the above-named expert to express additional opinions and/or elaborate or expand on her present opinions as discovery progresses as well as to respond to allegations, claims, and/or opinions made by any adverse party, potentially adverse party, and/or expert or fact witnesses associated with any adverse party.

Plaintiff further reserves the right for the above-named expert to supplement accordingly, inclusive of reasonably expanding the scope of the opinions and testimony of the above-named expert as necessary and/or appropriate and as may be developed during any deposition or trial testimony given herein.

## NON-RETAINED EXPERTS

Any and all other agents, employees, health care providers, physicians, nurses, assistants, technicians, therapists, and custodian of billing and records for:

1. Carlos Vargas, M.D. and/or Synergique Healing, P.A.
   8703 Meadowcroft Dr.
   Houston, TX 77063
   (713) 840-7956
   *Plaintiff's Attending Provider*

2. Janel Wheeler, LPC and/or Grow Therapy
   1601 Elm Street, Suite 4360
   Dallas, TX 75201
   (646) 687-9932
   *Plaintiff's Attending Provider*

3. Jeremy L. Jones, M.A., LPC and/or Bunkerhill Diagnostic Center
   9656 Katy Freeway, 2nd Floor
   Houston, Texas 77055
   (713) 468-8439
   *Plaintiff's Attending Provider*

4. BLVD Galleria
   5000 Westheimer Rd, Suite 630
   Houston, Texas 77056
   (713)-255-0780
   *Plaintiff's Attending Provider*

   (i)    The aforementioned providers may testify regarding Plaintiff's medical condition, inclusive of physical, mental and emotional condition, injuries, treatment, and any physical and psychological impact of those injuries.

   (ii)   These providers may also testify as to Plaintiff's past, present, and future physical pain and mental anguish, impairment, disability, medical care, and psychological care. Having provided treatment to Plaintiff, they may testify about the medical services and treatment rendered to her, including but not limited to her diagnosis, prognosis, past, future, and anticipated ongoing treatment. They may also offer

opinions regarding the cause of Plaintiff's conditions and/or injuries and address the necessity of any treatment and services provided to her. Furthermore, they are expected to testify that the charges incurred by Plaintiff and/or her insurers were reasonable and necessary, based on their knowledge and experience with customary charges for such services. The custodian of records may also testify regarding the records for each respective provider, including, but not limited to, the authenticity and accuracy of the records and the necessity of the professional services, treatments, and procedures reflected therein.

## FACT WITNESSES WHO MAY PROVIDE EXPERT TESTIMONY

Plaintiff may rely upon the opinion testimony of certain fact witnesses that, due to their education and employment background and experiences, are qualified to give opinions in this controversy. These fact witnesses include, but are not limited to those listed in any Party's Disclosures and in responses to discovery in general and that are incorporated by reference.

## CROSS-DESIGNATIONS

Plaintiff further designates any expert designated by any other parties to this lawsuit. Plaintiff designates and may call to testify as adverse witness any and all representatives under the control of the other parties to this lawsuit.

## REBUTTAL WITNESSES

Plaintiff reserves the right to call expert witnesses in rebuttal, whose identities and testimony cannot reasonably be foreseen until Plaintiff and/or other parties have presented evidence herein or at trial.

## RESERVATIONS

Plaintiff reserves the right to elicit by cross-examination the opinion testimony of experts

designated and/or called by other parties to this lawsuit and reserves the right to withdraw the designation of any expert witness and to aver positively that such previously designated expert will not be called as an expert witness at trial and to re-designate same as a consulting expert any who cannot be called by counsel.

Plaintiff reserves the right to amend and/or supplement this designation further within time limitations imposed by the Court and/or by alterations of the same by subsequent court order and/or by agreement of the parties and/or pursuant to the Federal Rules of Civil Procedure and/or the Federal Rules of Evidence. Plaintiff specifically notes that discovery in this case is extensive, voluminous, and ongoing. As discovery is completed, it is possible that the designation of additional expert witnesses may be required. All counsel will be immediately notified of any additional experts that Plaintiff may call. The necessity of this reservation is that the need for such testimony cannot be reasonably anticipated until the foregoing discovery is obtained.

Plaintiff reserves any and all additional rights she may have with regard to expert witnesses and testimony under the Federal Rules of Civil Procedure, the Federal Rules of Evidence, and case law and rulings of this Court.

## CONCLUSION

Plaintiff reserves the right to amend or supplement these disclosures and designations based upon newly discovered information or information disclosed by any Defendant or adverse party at any time during this litigation. Plaintiff has not completed the investigation of the facts relating to this case, depositions of all parties have been scheduled but have not yet commenced, and Plaintiff reasonably anticipates further written and oral discovery as to all parties. The information in the foregoing is based on knowledge of materials presently available and known to Plaintiff. It is possible that more discovery, independent investigation, legal research, and case

analysis will supply additional facts, add new meaning to presently known facts, or establish entirely new and/or additional factual conclusions and legal contentions, all of which may lead to additions to, change in, and variations from the information now in this disclosure. As necessary, Plaintiff will supplement this disclosure in accordance with any agreements of the parties and the requirements of Federal Rules of Civil Procedure. Plaintiff is providing the witnesses or documents omitted from this disclosure by oversight, inadvertence, or good faith mistake. In making these disclosures, Plaintiff does not admit the existence of or authenticity of any of the specific documents or categories of documents identified in this response, and Plaintiff specifically reserves any objections that they may have to the discoverability of those documents or categories of documents. This disclosure is not a waiver of any objections that Plaintiff may have.

Plaintiff reserves the right to call in her case in chief and/or in rebuttal, those persons who have been designated by any defendant herein, either in the past, by any dismissed defendant, or any current defendant. For Defendants' retained experts, please refer to Defendants' Designation by that defendant for the subject matter of that expert, the general substance of the experts' mental impressions and opinions as well as a brief summary of the basis for those opinions and impressions. Further, please refer to the documents referenced in each Defendant's Designation of Experts for the materials relied upon by each expert and the current resume and bibliography of each expert. By cross designation of these persons, Plaintiff is not vouching, agreeing or relying on the opinions, veracity, or expertise of these individuals or the basis for them.

Plaintiff reserves the right to supplement this designation with additional designations of experts within any time limits imposed by the court or any alterations of same by subsequent court order, agreement of the parties, or pursuant to the Federal Rules of Civil Procedure.

Respectfully submitted,

**THE WALLACE LAW FIRM, PLLC**

BELASHIA S. WALLACE
State Bar No. 24086710
Federal ID No. 3781822
363 N. Sam Houston Pkwy E., Suite 1400
Houston, Texas 77060
Telephone:  (281) 766-1700
Facsimile:  1-888-685-1831
E-mail:       BWallace@TheWallaceLaw.com
E-service:   Service@TheWallaceLaw.com

**ATTORNEY FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document has been served on all counsel of record according to the Federal Rules of Civil Procedure via electronic mail and/or ECF on April 21, 2025.

BELASHIA S. WALLACE

**Exhibit 1**



Regina W. Romeo, Owner
Sacramento, CA
(916) 588-0688
regina@romeoconsulting.com
www.reginaromeoconsulting.com

EXPERT WITNESS REPORT

Civil No. 4:24-cv-00598; Amunique Love v. Apache Corporation and APA Corporation

United States District Court for the Southern District of Texas Houston Division.

April 21, 2025

Belashia S. Wallace
The Wallace Law Firm, PLLC
363 N. Sam Houston Pkwy E., Suite 1400
Houston, Texas 77060

Dear Ms. Wallace,

My name is Regina W. Romeo. I am currently employed as the owner of Regina Romeo Consulting. I am currently completing my doctorate degree from Capella University in Organization and Leadership, and hold a master's degree in Public Administration with Specialization in Human Resource Management from National University. I have 25 years of experience in HR as a Chief HR Officer, Chief Diversity Officer, Countywide HR Director, manager and analyst in operations specializing in fair labor practice compliance, process improvement and change management. My experience includes evaluating employment practices, policies and workplace discrimination trends.

I have previously consulted on or been designated as an expert witness in over 150 state and federal cases involving discrimination, retaliation, ADA compliance, Title VII claims, and wrongful termination. A complete list of my prior testimony in the past four years at attached as *Exhibit A*. My CV, listing my qualifications, is attached as *Exhibit B.* I am not submitting any publications.

I am qualified to render an expert opinion on the matters contained within this report, which are based on my skills, education, training, knowledge, and experience.

I have reviewed the following materials related to this case and Amunique Love (also referred to herein as "Ms. Love") and Apache Corporation/APA Corporation (referred to herein as "Apache"):

- Apache's Employment Policies
- Written communications between Ms. Love and Apache employees and affiliates
- Medical Records of Ms. Love
- Ms. Love's Performance Reviews from Apache
- Audio recordings between Ms. Love and Apache employees
- Settlement Agreement from Apache to Ms. Love
- Charge of Discrimination
- Verified Interrogatory Answers of Ms. Love
- Plaintiff's First Amended Complaint

All of the opinions expressed in this report are based on my review of the aforementioned materials, and I reserve the right to amend these opinions in the event that additional materials or information are received.

This report is the result of my evaluation of the materials listed above. It is based on my skills, education, training, knowledge, and experience.

**The materials reveal the following:**

Amunique Love (referred to herein as "Ms. Love") is a Black/African-American woman with a dark skin tone and has had a medically supported and documented disability of Attention Deficit Hyperactivity Disorder (ADHD) since at least September 11, 2017, which she was under medical prescriptions for during and through the time of her employment with Apache.

## MARCH 2022

On March 21, 2022, Ms. Love began her employment with Apache in the role of Supplier Diversity Lead. There were no clearly written duties, roles, scheduling requirements or expectations for the position that were given to Ms. Love by the time of her hire, but the purported success of her role was to be the deciding factor for company-wide bonus incentives.

Multiple employment policies of Apache were effective at the time of her hire, which Apache disseminated to Ms. Love, inclusive of the following:

- I.T. Acceptable Use Policy, which governs employee access to internal technology tools and of which did not permit the denial of accommodation software or programs.

- Apache's Harassment Policy, which prohibited disability-based harassment and requires prompt intervention and corrective action and which includes a prohibition on retaliation, committing the company to protect employees who report unlawful discrimination or harassment from adverse employment consequences.

- Apache's Equal Employment Opportunity Policy, which  (like Apache's Harassment Policy) required prompt action to address racially inappropriate behavior and protect employees from discrimination.

- Apache's Equal Employment Opportunity Policy and Harassment Policy individually and collectively prohibited discrimination and race-based conduct in the workplace and required prompt action to address racially inappropriate behavior and protect employees from discrimination. The policies required timely and impartial investigations into all race-related complaints, prohibit retaliation, and obligated supervisors to address racially inappropriate conduct.

On March 25, 2022, Ms. Love requested accommodation for her ADHD disability of adding the extensions for Read aloud, Google translate, and Grammarly in order to perform assignments given to her. Her request was communicated throughout this period to her immediate supervisor, managers, IT, and HR, who gave Ms. Love assurances that her request would be fulfilled.

On March 28, 2022, IT denied Ms. Love's reasonable accommodation request in writing and without any alternatives offered by Apache. Ms. Love subsequently reported the denial to her supervisor, managers, and HR, who assured Ms. Love that the request would be fulfilled.

**APRIL 2022**

Ms. Love receives public commendations from various members of Apache based on her stellar performance. Ms. Love specifically communicates her disability "learning curve" to her immediate supervisor.

Ms. Love is assigned various voluminous manual tasks, inclusive of data review and analyzation from Egypt without specific instructions or guidance.

Ms. Love requests IT assistance for access to necessary systems, such as shared mailboxes necessary for the completion of her assignments, but IT does not fulfill Ms. Love's request.

Ms. Love is later not included on written communications require for her involvement and working with other team members, such as the CMSS team.

Ms. Love was not provided with any accommodations or alternatives.

**MAY 2022**

Jonathan Jenkins of IT yelled at Ms. Love in her office to tell her that the accommodation requests were being denied and questioned whether she even had a disability. Ms. Love reported the same to her supervisor, managers, and HR, who assured Ms. Love that the request would be fulfilled.

Ms. Love manages and promptly responds to excessive written communications on a consistent basis that are distributed to her in time sensitive manners and of which requires the reading and analyzation of voluminous dates. In addition, Ms. Love is also encouraged to participate in and initiate professional relationship building amongst colleagues and affiliates, which she does, reflecting work being performed by Ms. Love on behalf of and/or for the benefit of Apache at various times and days outside of standard business hours. Though actively communicating and fulfilling her assignments with exceeding of additional projects, she is additionally asked to resolve technical issues outside of her role to give indicators as to her working visibility.

Ms. Love is not provided with any accommodation or alternatives.

**JUNE 2022**

Ms. Love is tasked with organizing multiple events for the benefit of Apache, while also being assigned manually intensive and analytical tasks involving tracking source metrics for entire systems and platforms.

Ms. Love was assigned to review, analyze, and report a massive points of data in excess of 100,000 individual data points.

Ms. Love had a Mid-Year Performance Review with her supervisor, Brenda Udunna, and Veronica Cotton of HR. The performance review reflected that Ms. Love met or exceeded all expectations, being described as "onboarding well into her role" and where Brenda Udunna referenced looking

forward to working with Ms. Love. Ms. Love specifically referenced in her self-evaluation about "overextending" herself, for which, Brenda Udunna agreed.

Ms. Love is not provided with any accommodation or alternatives.

**AUGUST 2022**

Ms. Love was assigned to review, analyze, and report a massive points of data in excess of 100,000 individual data points.

Ms. Love is again tasked with sending, reviewing, analyzing, and responding to hundreds of emails on a consistent basis, inclusive of determining whether the email addresses of Apache's contact lists were viable. She specifically notes tracking hundreds of suppliers and contacts with detailed specificity requested of her, where she communicates specifics, such as reviewing and tallying exactly "311" missing/bounced emails.

Ms. Love is not provided with any accommodation or alternatives.

**SEPTEMBER 2022**

Ms. Love was assigned to review, analyze, and report a massive points of data in excess of 100,000 individual data points.

Ms. Love is repeatedly assigned additional, time-intensive analytical tasks under unreasonable time constraints, such as condensing a 30-minute presentation in a cohesive and comprehensive manner down to three minutes, requiring her to perform these late-assigned tasks over the weekend, for which her supervisor and other upper management were aware, yet providing her with no assistance.

Sara Robichaux begins directing inquiries to Ms. Love that were for Sara Robichaux's response but that Ms. Love had not previously received any direction or instruction on.

Ms. Love is not provided with any accommodation or alternatives.

**OCTOBER 2022**

Despite Ms. Love's excessive tasks, Ms. Love was additionally tasked with research for the credit and usage of other members of Apache.

Ms. Love was assigned to review, analyze, and report a massive points of data in excess of 100,000 individual data points, which were referenced as time sensitive matters that Ms. Love met the deadlines for by promptly responding to various communications on the assignment. The internal communications indicate that there was no clear system or process in place as to this assignment, which was regularly altered by other members of Apache.

Ms. Love was also given additional assignment requiring the usage of other platforms similar to, SharePoint. However, Ms. Love was not given such access and impeding her ability to be able to complete those assignments on several occasions for which Apache was aware but delayed to act upon.

Ms. Love is not provided with any accommodations or alternatives.

**NOVEMBER 2022**

Ms. Love was assigned to review, analyze, and report a massive points of data in excess of 100,000 individual data points, which were referenced as time sensitive matters that Ms. Love met the deadlines for by promptly responding to various communications on the assignment. This updated assignment required Ms. Love's advanced application and usage of Microsoft Excel, which Ms. Love specifically requested necessary access and training on, as it required the application of formulas and data that Ms. Love would need to analyze/create from scratch.

Without the requested assistance Ms. Love is additionally assigned to add monetary metrics requiring manual calculations and input by Ms. Love.

Ms. Love is not provided with any accommodation or alternatives.

**DECEMBER 2022**

Ms. Love was assigned to review, analyze, and report a massive points of data in excess of 100,000 individual data points. In addition, she was assigned 200+ vendor entries to process, which she timely completed.

In addition, Ms. Love was tasked to assist other staff members, who were outside of her immediate department for the completion of their assignments which she also fulfilled.

On December 13, 2022, for the first time I.T. indicated that they would fulfill Ms. Love's prior accommodation request of Google Translate. Ms. Love's accommodation request was never fulfilled before her termination. Ms. Love is not provided with any accommodation or alternatives, and was commended on a company call.

**JANUARY 2023**

Ms. Love was assigned to review, analyze, and report a massive points of data in excess of 100,000 individual data points. In addition, Ms. Love was assigned time sensitive tasks.

Ms. Love was requested to report this information in a monthly data scale, which was later changed to a weekly data scale requiring Ms. Love to initiate the assignment all over again.

Ms. Love was also required to address system issues that were outside of her the scope of role.

During this time, Ms. Love was tasked to complete international communications and calls in languages other than those for which Ms. Love spoke. No accommodation or tools were provided to Ms. Love to perform these assignments.

Ms. Love was required to provide multiple assessments of data she worked on involving a project of more than 100,000 emails, 3,000 contacts, and more than 600 phone calls, for which she was to further analyze macro and micro-level scopes of weekly breakdowns, percentages and counting.

Ms. Love was additionally asked to redo formulas based on a one-time switch of numerical digits that indicated a typo rather than a miscalculation.

## FEBRUARY 2023

Ms. Love notifies Brenda Udunna of a family member's death and requests bereavement leave. Brenda Udunna approves but later intensifies workload demands.

Veronica Guiton confirms "use or lose" vacation policy deadline stating "*Any carryover from 2022 must by used by June 30, 2023… it is included in your regular vacation and not a separate line item.*"

Ms. Love completes a vendor list for CMSS team.

Brenda Udunna requests Ms.Love resolve 40+ SCoC pushbacks by noon.

Ms. Love co-organizes Apache's Black History Month event, inclusive of ballon vendor coordination and was praised her contributions.

Ms. Love was assigned to review, analyze, and report a massive points of data in excess of 100,000 individual data points. In addition, Ms. Love was given further intensive assignments of detailed reporting on the excessive metrics with less than a one-day turnaround.

Ms. Love was again asked for statuses on a weekly breakdown of manually intensive tasks, for which Ms. Love stated that it was "a heavy manual task." There was no response to offer assistance for Ms. Love.

Ms. Love participated in a Year-End Performance Review with her supervisor, Brenda Udunna, and HR representative Veronica Cotton. The review indicated that Ms. Love met or exceeded all expectations numerically and, by narrative description, exceeded all expectations. However, while several written comments stated that she exceeded expectations, some of these areas were still rated as only 'meeting expectations' in the final scoring. In no areas in her review by scoring or description did Ms. Love fail to meet any expectations referenced in her Year-End Performance Review. Additionally, Brenda Udunna expressed she was "looking forward to working with her" further reassuring Ms. Love that her job was not at risk.

**MARCH 2023**

Ms. Love achieved a strong 82% supplier compliance rate, yet was given an unreasonable measure to obtain 100% signatures from third parties.

Ms. Love was featured in global diversity publications for her notable performance within her role.

Ms. Love was subsequently excluded from communication related to reporting metrics that she had previously been assigned to oversee. Ms. Love was additionally treated less favorably than non-minority colleagues.

Ms. Love was instructed to indicate altered date points inaccurately, which Ms. Love questioned and reported to her immediate supervisor and HR.

Ms. Love submits finalized SCoC report with Brenda Udunna demanding same-day revisions stating that for example, "*Sara will be out Thursday and has asked for the weekly reports tomorrow*."

The day before Ms. Love's termination, Ms. Love communicated with other staff regarding dealing with microaggressions as an employee.

Ms. Love was terminated without warning, prior counseling, or any documented performance deficiencies. During the termination meeting, Apache personnel praised her performance and contributions to DE&I but stated her employment was ending effective immediately. The termination was timed to occur on the final business day of the month, which resulted in immediate loss of health benefits, despite Apache's knowledge of her ongoing need for ADHD-related medication.

**APPLICABLE LAW**

**RACE AND COLOR DISCRIMINATION, IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e AND 42 U.S.C. § 1981**

Federal law prohibits workplace discrimination based on race or color. Specifically, **Title VII, 42 U.S.C. § 2000e-2(a)(1)** bars employers from discriminating against individuals in terms of compensation, terms, conditions, or privileges of employment due to race or color. **Section 2000e-2(a)(2)** further prohibits limiting or classifying employees in any way that would deprive them of employment opportunities or adversely affect their status because of their race. Additionally, **42 U.S.C. § 1981** guarantees all persons the same rights to make and enforce contracts, including employment relationships, regardless of race.

Apache's Equal Employment Opportunity Policy and Harassment Policy prohibit discrimination and race-based conduct in the workplace. These policies require timely and impartial investigations into all race-related complaints, prohibit retaliation, and obligate supervisors to address racially inappropriate conduct.

In this case, Ms. Love was repeatedly subjected to racial microaggressions and exclusionary behavior. Supervisors mocked her skin tone by referring to her and a colleague as "the dark side." She was systematically removed from DEI meetings and sidelined from initiatives that were core to her job. Non-Black colleagues appropriated her projects while she was instructed not to speak on diversity, equity, or inclusion—despite these being the central duties of her role. Audio recordings, HR meeting notes, and email trails corroborate that Ms. Love's initiatives were externally praised while internally undermined. She was also held to unequal standards, including unreasonable workload expectations and excessive scrutiny, compared to her non-Black peers.

These facts demonstrate a racially hostile work environment and disparate treatment. Apache failed to investigate or discipline those responsible and allowed the conduct to persist over an extended period—from at least August 2022 through her termination in March 2023.

## DISABILITY DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT ("ADA"), 42 U.S.C. § 12112

Under the ADA, **42 U.S.C. § 12112(a)** prohibits discrimination against a qualified individual with a disability in any employment practice. Further, **§ 12112(b)(5)(A)** requires employers to provide reasonable accommodations unless it would impose an undue hardship on the operation of the business.

**Apache's Harassment Policy** prohibits disability-based harassment and requires prompt intervention and corrective action. In addition, the **I.T. Acceptable Use Policy** governs employee access to internal technology tools. The denial of accommodation software such as Grammarly and Google Translate was not supported by the written terms of this policy and instead was selectively enforced against Ms. Love by Apache's IT staff.

In this case, Ms. Love, who has a documented diagnosis of ADHD, requested a simple accommodation on March 25, 2022: read-aloud computer software and tools like Google Translate and Grammarly to help her process large volumes of data. The requested tools were cost-free and readily available, but Apache's IT employee Jonathan Jenkins denied the request, questioned whether she even had a disability, and refused to consider alternatives. Jenkins proceeded to harass Ms. Love through emails, in-person confrontations, and inappropriate commentary about her disability—often in public view. Ms. Love reported the conduct to HR, who assured her the accommodation would be fulfilled and Jenkins reprimanded, yet neither occurred. For over a year, the accommodation was never provided, and the harassment continued.

## RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e-3(a)

42 U.S.C. § 2000e-3(a) prohibits an employer from retaliating against an employee because the employee has either opposed any practice made unlawful under Title VII or has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII.

Apache's Harassment Policy includes a prohibition on retaliation, committing the company to protect employees who report unlawful discrimination or harassment from adverse employment consequences.

In this case, Ms. Love engaged in multiple protected activities during her employment. She reported disability-based harassment in May 2022, made continued complaints to HR throughout 2022, and filed an internal complaint on March 9, 2023, alleging race discrimination, ADA violations, and unethical reporting practices. Just days after reiterating those complaints in writing on March 30, 2023, she was terminated on March 31 without warning, discipline, or documented performance issues—despite internal praise for her DEI work and successful initiatives. The termination caused her immediate loss of health benefits, even though Apache knew she needed ongoing ADHD medication. She was then pressured to sign a settlement agreement waiving her rights in exchange for temporary continuation of benefits, which she declined.

## VIOLATIONS

### RACE AND COLOR DISCRIMINATION, IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C § 2000e AND 42 U.S.C. § 1981

Apache violated both Title VII and 42 U.S.C. § 1981 by subjecting Ms. Love to a racially hostile work environment, excluding her from the core functions of her DEI role, and terminating her based on discriminatory motives. These acts also violated Apache's **Equal Employment Opportunity Policy** and **Harassment Policy,** which required prompt action to address racially inappropriate behavior and protect employees from discrimination. Apache failed to investigate Ms. Love's reports or discipline the employees involved and instead allowed a racially exclusionary workplace culture to persist.

Apache should have promptly and thoroughly investigated Ms. Love's complaints, disciplined the offending parties (as needed), reaffirmed her leadership role in DEI, and ensured that she was treated equally with similarly situated employees. Instead, its inaction and failure to take her complaint seriously allowed a discriminatory culture to flourish, culminating in Ms. Love's wrongful termination.

### DISABILITY DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT ("ADA"), 42 U.S.C. § 12112

Apache violated the ADA by failing to provide a reasonable accommodation for Ms. Love's ADHD, despite repeated requests and available tools. It further failed to engage in the interactive process required by law and subjected her to a hostile environment through the conduct of its IT staff. These failures directly violated Apache's own **Harassment Policy**, which prohibited disability-based harassment and required responsive action. Apache's selective and obstructive enforcement of the **I.T. Acceptable Use Policy** to deny accommodation tools further reflects discriminatory intent.

Apache was required to explore reasonable accommodations in good faith, implement them promptly, and prevent retaliatory conduct by coworkers or IT staff. Instead, it allowed a pattern of

disability-related hostility and obstruction that ultimately impacted Ms. Love's ability to do her job and subjected her to further harm.

**RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e-3(a)**

Apache violated **42 U.S.C. § 2000e-3(a)** and its own **Harassment Policy** when it terminated Ms. Love shortly after she filed a formal internal complaint of discrimination. The timing of the termination—just one day after her final written complaint—coupled with the absence of any documented performance issues, supports an inference of retaliatory motive. Apache's attempt to pressure Ms. Love into signing a settlement agreement further reinforces this conclusion from their violating actions.

Apache should have protected Ms. Love from retaliation by thoroughly investigating her reports and ensuring that any employment decisions were unrelated to her protected conduct. Instead, it failed to insulate her from adverse action and chose to terminate her in the wake of her disclosures, in violation of federal law.

## APACHE POLICIES

- Harassment Policy defines prohibited conduct (sexual, racial, age-based, etc.) and mandates reporting to HR or Compliance.
- No Retaliation Policy prohibits retaliation against whistleblowers.
- Harassment Policy bans harassment based on protected characteristics

To assess whether discrimination, retaliation, and wrongful termination occurred, I applied the following methods:

1. **ADA Compliance Review:** Evaluated Defendant's policies and actions against federal ADA accommodation guidelines.
2. **Retaliation Causation Analysis:** Analyzed the timing of adverse actions in relation to Plaintiff's protected activity.
3. **Wrongful Termination Review:** Examined termination procedures, consistency in enforcement of company policies, and evidence supporting pretext for discrimination.
4. **Statistical Review:** Conducted an industry-standard review of **workplace bias indicators**.

## OPINION:

Based on my review of the evidence, applicable employment laws, Apache's internal policies, and my expertise in HR practices and workplace discrimination, it is my professional opinion that Apache engaged in unlawful employment practices by discriminating against Ms. Love on the basis of her race, color, and disability; by retaliating against her after she engaged in protected activity; and by terminating her under pretextual circumstances that deviated from accepted HR standards and internal procedures; and by failing to investigate her complaints further. These actions violated Title VII of the Civil Rights Act, the Americans with Disabilities Act, and 42

U.S.C. § 1981. I reserve the right to amend or supplement this report should new evidence become available through discovery.

I specifically reserve the right to add to, amend or subtract from this report as new evidence comes into discovery, or as new opinions are formulated.

Respectfully,

Regina W. Romeo

**Appendix A**

**Expert Witness Cases**

| | |
|---|---|
| **Case Name:** | Beavers v. Gates, Kingsley & Gates Praiswater (D) |
| **Case Number:** | LC 095755 |
| **Court:** | Superior Court of the State of California |
| | County of Los Angeles, Northwest Division |
| **Representing:** | Defendant |
| **Complaint(s):** | Wrongful Termination, FMLA/CFRA Violation |
| **Attorney of Record:** | Defendant – David Daniels (916) 797-3100 |

| | |
|---|---|
| **Case Name:** | Bauer v. County of San Bernardino |
| **Case Number:** | EDCV12-501 VAP (DTBx) |
| **Court:** | United Stated District Court |
| | Central District of California |
| **Representing:** | Plaintiff |
| **Complaint(s):** | Wrongful Termination, FMLA/CFRA Violation |
| **Attorney of Record:** | Plaintiff – Chris L. Gaspard (909) 581-6115 |

| | |
|---|---|
| **Case Name:** | Taylor v. Blaine Labs, Inc (D) |
| **Case Number:** | BC473928 |
| **Court:** | Superior Court of the State of California |
| | County of Los Angeles, Stanley Mosk |
| **Representing:** | Defendant |
| **Complaint(s):** | Wrongful Termination, PDL Violation |
| **Attorney of Record:** | Nannina Angioni; Brown, White & Newhouse (213) 613-1259 |

| | |
|---|---|
| **Case Name:** | Ortiz v. Southern Wine & Spirits of America |
| **Case Number:** | BC465601 |
| **Court:** | Superior Court of the State of California |
| | County of Los Angeles |
| **Representing:** | Plaintiff |
| **Complaint(s):** | Wrongful Termination, Racial Discrimination |
| **Attorney of Record:** | Ed Kim, Nancy Abrolat Law (310) 615-0008 |

| | |
|---|---|
| **Case Name:** | Alonso v. Hanes & Associates, Inc |
| **Case Number:** | BC483808 |
| **Court:** | Superior Court of the State of California |
| | County of Los Angeles, Central |
| **Representing:** | Plaintiff |
| **Complaint(s):** | Wrongful Termination |
| **Attorney of Record:** | Kati Hollis, Lyon Law, (562) 590-6900 |

| | |
|---|---|
| **Case Name:** | Espinoza v. Oasis Ranch Management, Inc. |
| **Case Number:** | BC473928 |
| **Court:** | Superior Court of the State of California |
| | County of Riverside, Indio Larson Justice Center |

**Representing:**          Defendant
**Complaint(s):**          Wrongful Termination, Racial Discrimination
**Attorney of Record:** Patrick Hartnett, Hartnett Law Group, (714)738-1156

---

**Case Name:**            Gonzalez v. Key Disposal Inc. (D)
**Case Number:**          BC480497
**Court:**                Superior Court of the State of California
                          County of Los Angeles
**Representing:**          Plaintiff
**Complaint(s):**          Wrongful Termination, Disability Discrimination
**Attorney of Record:** Tom Mortimer, Sean Blakely, Mahoney Law Group (562) 590-5550

---

**Case Name:**            Dawson v. Lanterman Developmental Center (D)
**Case Number:**          KC064347
**Court:**                Superior Court of the State of California
                          County of Los Angeles, East District – Pomona Courthouse South
**Representing:**          Plaintiff
**Complaint(s):**          Wrongful Termination, Disability Discrimination
**Attorney of Record:** Geoffrey C. Lyon, Lyon Law Group, (562) 590-6900

---

**Case Name:**            Hudson v. Norwalk-LaMirada Unified School District (D)
**Case Number:**          BC477952
**Court:**                Superior Court of the State of California
                          County of Los Angeles, Central District – Stanley Mosk
**Representing:**          Plaintiff
**Complaint(s):**          Wrongful Termination, Gender Discrimination
**Attorney of Record:** Geoffrey C. Lyon, Lyon Law Group, (562) 590-6900

---

**Case Name:**            Vazquez v. Metropolitan Transit Authority (MTA) (D) (T)
**Case Number:**          BC484335
**Court:**                Superior Court of the State of California
                          County of Los Angeles
**Representing:**          Plaintiff
**Complaint(s):**          Wrongful Termination, Disability Discrimination
**Attorney of Record:** Scott Cummings, Cummings & Franck, (310) 295-2195

---

**Case Name:**            Miller-Brumfield v. California Department of Mental Health (D)
**Case Number:**          CIVDS1202395
**Court:**                Superior Court of the State of California
                          County of San Bernardino, Civil Division
**Representing:**          Plaintiff
**Complaint(s):**          Gender, Disability and Racial Discrimination
**Attorney of Record:** Geoffrey C. Lyon, Lyon Law Group, (562) 590-6900

---

**Case Name:**         Butler v. Illinois Department of Transportation (D)
**Case Number:**       1:11 – CV – 1412
**Court:**             United States District Court, Northern District of Illinois
                       Eastern Division
**Representing:**      Plaintiff
**Complaint(s):**      Wrongful Termination, Racial and Age Discrimination
**Attorney of Record:** Yao Dinizulu, Dinizulu Law Group, (312) 782-4117

---

**Case Name:**         Butler Fikes v. Elsinore Valley Municipal Water District (D)
**Case Number:**       ED12-01900-PSG (OPx)
**Court:**             United States District Court
**Representing:**      Plaintiff
**Complaint(s):**      Wrongful Termination, Age Discrimination
**Attorney of Record:** Dennis Wagner, Wagner & Pelayes, (951) 686-4802

---

**Case Name:**         Ko v. Square Group (D) (T)
**Case Number:**       BC487739
**Court:**             Superior Court of the State of California
                       County of Los Angeles, Central District
**Representing:**      Plaintiff
**Complaint(s):**      Wrongful Termination, Disability Discrimination
**Attorney of Record:** Henry M. Lee, (213) 382-0955

---

**Case Name:**         Esparza v. American Bottling Company (D)
**Case Number:**       30-2013-00656369-CU-OE-CJC
**Court:**             Superior Court of the State of California
                       County of Orange, Central Justice Center
**Representing:**      Plaintiff
**Complaint(s):**      Wrongful Termination, Sexual Harassment, Disability
                       & Age Discrimination
**Attorney of Record:** Geoffrey C. Lyon, Lyon Law Group, (562) 590-6900

---

**Case Name:**         Adamson v. City of Long Beach (D)
**Case Number:**       NC058020
**Court:**             Superior Court of the State of California
                       South District, Long Beach
**Representing:**      Plaintiff
**Complaint(s):**      Wrongful Termination, Disability Discrimination, Medical Leave
                       Retaliation
**Attorney of Record:** Geoffrey C. Lyon, Lyon Law Group, (562) 590-6900

---

**Case Name:**      Vander Welle v. EDI Healthgroup, Inc.
**Case Number:**    SCV 0031305
**Court:**          Superior Court of the State of California, County of Placer
**Representing:**   Plaintiff
**Complaint(s):**   Wrongful Termination, Disability Discrimination
**Attorney of Record:** Teresa Cunningham, (707) 252-9000

---

**Case Name:**      Massey v. City of Long Beach (D)
**Case Number:**    BC 518178
**Court:**          Superior Court of the State of California
                    Los Angeles, Central District
**Representing:**   Plaintiff
**Complaint(s):**   Wrongful Termination, Racial Discrimination
**Attorney of Record:** Jeffrey Sklar, (310) 770-6214

---

**Case Name:**      Betsworth v. San Bernardino County, ARMC
**Case Number:**    CV 13-01058 JGB (SPx)
**Court:**          United States District Court, Central District of California
**Representing:**   Plaintiff
**Complaint(s):**   Disability Discrimination (non-employment)
**Attorney of Record:** Abraham A. Tabaie, (213) 687-5133

---

Case Name:      Modiano v. Fresh Egg, LLC
Case Number:    37-214-00018715-CU-WT-CT
Court:          California Superior Court, County of San Diego
Representing:   Defendant
Complaint(s):   Wrongful Termination, Age Discrimination
Attorney of Record:   Cindy Brand, (619) 294-8143

---

**Case Name:**      Lenard v. Orange County Transit Authority (OCTA)(D)
**Case Number:**    30-2013-0069045-CU-OE-CJC
**Court:**          California Superior Court, Orange County
**Representing:**   Plaintiff
**Complaint(s):**   Wrongful Termination, Disability Discrimination
**Attorney of Record:** Geoffrey C. Lyon, Lyon Law Group, (562) 590-6900

---

**Case Name:**      Downey Firemen's Association v. City of Downey
**Case Number:**    14-CV-01213
**Court:**          United States District Court, Central District
**Representing:**   Plaintiff
**Complaint(s):**   Retaliation
**Attorney of Record:** Caleb Mason, Brown, White & Osborn, LLP, (213) 613-0500

---

**Case Name:**         Cabrera v. Popchips (D)(T)
**Case Number:**       BC597293
**Court:**             California Superior Court, Los Angeles – Central District
**Representing:**      Plaintiff
**Complaint(s):**      Wrongful Termination, Disability Discrmination
**Attorney of Record:** Robert Tafoya, Tafoya & Garcia, LLP (213) 617-0600

---

**Case Name:**         Melendrez v. JK Communication
**Case Number:**       **N/A**
**Court:**             N/A
**Representing:**      Plaintiff
**Complaint(s):**      Wrongful Termination
**Attorney of Record:** Liane Katzenstein, Kingsley & Kingsley, (818) 650-6429

---

**Case Name:**         Bareno v. San Diego Community College District (D)
**Case Number:**       37-2014-00003862-CU-OE-CTL
**Court:**             California Superior Court, San Diego – Central Branch
**Representing:**      Plaintiff
**Complaint(s):**      Wrongful Termination, Disability Discrimination
**Attorney of Record:** Mark Joseph Valencia, Valencia & Cywinska, (213) 627-9944

---

**Case Name:**         Espinoza v. Valor
**Case Number:**       BC 651519
**Court:**             California Superior Court, Los Angeles – Central District
**Representing:**      Defendant
**Complaint(s):**      Wrongful Termination, Pregnancy Discrimination
**Attorney of Record:** Alvin B, Sherron, Law Offices - Alvin B. Sherron (213) 482-3236

---

**Case Name:**         Faria v. CalTrans
**Case Number:**       34-2015-00188290
**Court:**             California Superior Court, Sacramento
**Representing:**      Defendant
**Complaint(s):**      Wrongful Termination
**Attorney of Record:** Paul R. Brown, State of California

---

**Case Name:**         Fernandez v. Sephora
**Case Number:**       CGC-17-556227
**Court:**             California Superior Court, County of San Francisco
**Representing:**      Plaintiff
**Complaint(s):**      Wrongful Termination, Pregnancy Discrimination
**Attorney of Record:** Ashwin Ladva, Ladva Law Firm, (415) 296-8844

---

**Case Name:**         La Verne Firefighter's Association v. City of LaVerne
**Case Number:**       2:17-CV-8743-GW-AFM
**Court:**             United States District Court, Central District

**Representing:**     Plaintiffs
**Complaint(s):**    Retaliation
**Attorney of Record:** Caleb Mason, Brown, White & Osborn, LLP, (213) 613-0500

---

**Case Name:**     Johnson vs. CA Department of Transportation (DOT/Cal Trans) (D)
**Case Number:**   STK-CV-UCR-2019-281
**Court:**       California, Superior Court, San Joaquin
**Representing:**    Defendant
**Complaint(s):**   Discrimination, Harassment, Retaliation
**Attorney of Record:** Christopher Sims, DOT, (916) 654-2630

---

**Case Name:**     Dominguez vs. ICON Realty (D)
**Case Number:**   20STCV24235
**Court:**       California Superior Court, Los Angeles
**Representing:**    Plaintiff
**Complaint(s):**   Wrongful Termination, Retaliation
**Attorney of Record:** Elizabeth Villareal, Romero Law, (626) 869-2364

---

**Case Name:**     Shamaan v. Beverly Hospital (D)
**Case Number:**   21STCV18015
**Court:**       California Superior Court, Los Angeles
**Representing:**    Plaintiff
**Complaint(s):**   Retaliation, Discrimination, Harassment
**Attorney of Record:** Mark J. Valencia, Valencia & Cywinska, LLC, (949) 610-5293

---

**Case Name:**     Carrillo v ChildHelp, Inc.,
**Case Number:**   21STCV02346
**Court:**       California Superior Court, Los Angeles
**Representing:**    Plaintiff
**Complaint(s):**   Discrimination, Wrongful Termination
**Attorney of Record:** Mark J. Valencia, Valencia & Cywinska, LLC, (949) 610-5293

---

**Case Name:**     Villa vs. United Metal Products (D)
**Case Number:**   30-2017-00937579-CU-OE-CJC
**Court:**       California Superior Court, Orange
**Representing:**    Plaintiff
**Complaint(s):**   Discrimination, Harassment, Wrongful Termination
**Attorney of Record:** Raymond Hane, CA Employment Council, (714) 462-8376

---

**Case Name:**     Barker v. San Mateo County
**Case Number:**   22-CIV-04961

**Court:**              California Superior Court, San Mateo
**Representing:**       Defendant
**Complaint(s):**       Discrimination, Harassment
**Attorney of Record:** San Mateo County Counsel

---

**Case Name:**          Mathena v. LeafFilter (D)
**Case Number:**        CV 23 981388
**Court:**              Court of Common Pleas, Cuyahoga County, Ohio
**Representing:**       Defendant
**Complaint(s):**       Discrimination, Harassment, Wrongful Termination
**Attorney of Record:** Yelena Katz

---

**Case Name:**          Hansen & Beckman v. American Airlines
**Case Number:**        30-2017-00937579-CU-OE-CJC
**Court:**              US District Court, Central District of California
**Representing:**       Defendant
**Complaint(s):**       Discrimination, Harassment, Retaliation, Whistleblower
**Attorney of Record:** Allison Bader, Kelly Wood

---

**Case Name:**          Love v. Apache
**Case Number:**        **4:24-cv-00598**
**Court:**              US District Court, Southern District of Texas, Houston Division
**Representing:**       Plaintiff
**Complaint(s):**       ADA/Disability Discrimination, Harassment, Retaliation
**Attorney of Record:** Belashia Wallace

---

**Case Name:**          Thompson v. County of Santa Clara
**Case Number:**        22CV397701
**Court:**              California Superior Court, Santa Clara
**Representing:**       Plaintiff
**Complaint(s):**       ADA/Disability Discrimination
**Attorney of Record:** Vincent Tong

(D) - Indicates deposition testimony was given
(T) - Indicates trial testimony was given

## Appendix B

*Curriculum Vitae for REGINA W. ROMEO*

### EDUCATION

*Doctor of Business Administration (DBA)* Organization and Leadership Specialization,
    Capella University (in progress)
*PhD (*ABD) Organization and Management, Human Resources ManagementSpecialization,
    Capella University, School of Business & Technology
*Master of Public Administration* (MPA), Human Resources Management Specialization
        National University School of Business and Management, La Jolla CA
*Bachelor of Arts* (BA) in Behavioral Science, Criminal Justice Minor, Cum Laude Graduate
        National University, Sacramento, CA
Executive Leadership Development Program Certification, University of Southern California
        (USC), Price School of Public Policy

### PROFESSIONAL PROFILE

Innovative Human Resources Professional with over 25 years of experience in HR as a Chief HR Officer, Chief Diversity Officer, Countywide HR Director, manager and analyst in operations specializing in fair labor practice compliance, process improvement and change management. HR scholar and practitioner with firsthand operational experience providing training for all levels of staff from front line to executive, onboarding, performance management, analysis and responses for complaints, grievances, investigations and litigation involving wrongful termination, medical leave violations, sexual harassment and other areas of employment law. Dynamic public speaker and Forbes author with extensive experience designing and delivering virtual and in-person training, broadcasting, podcasting and keynote speaking.

### AREAS OF EXPERTISE

Consulted on over 150 state and federal employment law cases as an expert witness for plaintiffs and defendants (50/50) with almost 15 years of deposition and trial experience. Expert knowledge of Title VII causes of action, (discrimination, harassment, retaliation, etc.) Fair Employment and Housing Act (FEHA) Americans with Disabilities Act as Amended (ADAAA), Worker's Compensation, Family and Medical Leave Act (FMLA), California Family Rights Act (CFRA), Pregnancy Disability Leave (PDL), California employment law, wrongful termination, employee relations, labor relations, counseling, discipline, performance management, document examination and workplace investigations.

### EMPLOYMENT HISTORY

Owner, Principal Consultant, Regina Romeo Consulting, July 2011-Present
Chief Human Resources Officer/Chief Diversity Officer, CPS HR Consulting -May 2018 – October 2022
Director of Human Resources, Sutter County, May 2017 - May 2018
Human Resources Manager, Los Angeles County, October 2013 - May 2017
Human Resources Analyst, Los Angeles County, May 2006 - October 2013



2531 Judith Resnik Ave.
Sacramento, CA 95834
(916) 588-0688
reginaromeoconsulting@gmail.com

### SCHEDULE OF FEES

| | |
|---|---|
| Initial Consultation | No Charge |
| Case Work (consulting, researching, case analysis, document reviewing, investigating, report writing, etc.) | $450 per hour |
| Trial Testimony | $650/hr. (Four-hour minimum) |
| Deposition Testimony | $600 per hour |
| Travel | $100/hour if over 200 miles |
| Airfare, Lodging and Ground Transportation | Reimbursed at cost |
| Out-of-pocket expenses including but not limited to film, reproduction, fax and similar reimbursable costs. | Reimbursed at cost plus 15%. |

❖ A $4,500 non-refundable retainer is due upon designation and contract execution and will be applied to the first invoice.

❖ Fees for trial testimony shall be paid five (5) business days in advance based on the anticipated length of the examination. Balances due shall be paid within ten days.

❖ A 72-hour notice for cancellations of any scheduled appointments or testimony is needed or the full fee will be charged.