**In the United States District Court**
**For the Southern District of Texas**
**Houston Division**

| | | |
|---|---|---|
| **Amunique Love,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | |
| | § | **Civil Action No. 4:24-cv-00598** |
| **Apache Corporation** and **APA** | § | |
| **Corporation,** | § | |
| | § | |
| *Defendants.* | § | |

---

**Defendant Apache Corporation's Motion for Summary Judgment**

---

DATED: December 19, 2025

Respectfully submitted,

## HICKS THOMAS LLP
A REGISTERED LIMITED LIABILITY PARTNERSHIP

By:     */s/ Stewart Hoffer*
_____

**Stewart Hoffer (Attorney in Charge)**
SDTX No. 20123
Texas Bar No. 00790891
shoffer@hicks-thomas.com
**Chaim "Kai" Mindick**
SDTX No. 3938991
Texas Bar No. 24133963
kmindick@hicks-thomas.com
700 Louisiana Street, Suite 2300
Houston, Texas 77002
Telephone: (713) 547-9100
Facsimile: (713) 547-9150

**Attorneys for Defendants Apache Corporation**
**and APA Corporation**

112736614

# TABLE OF CONTENTS

Nature and Stage of the Proceeding/Summary of the Argument .................................................... 1

Issues Requiring Resolution/Standard of Review ............................................................................ 1

Statement of Undisputed Material Facts ......................................................................................... 2

Argument and Authorities ............................................................................................................... 2

   A.   The Court should grant summary judgment on Plaintiff's claim for hostile work
   environment. ............................................................................................................................... 2

      1.   The "Dark Side" and Hip-Hop Lyrics comments. ......................................................... 7

      2.   The Jenkins Incident. ..................................................................................................... 9

      3.   Comparison of Fifth Circuit authority. .......................................................................... 9

   B.   The Court should grant summary judgment on Plaintiff's failure to accommodate claim
   under the ADA .......................................................................................................................... 11

      1.   Plaintiff's failure to accommodate claim is time-barred. ............................................. 11

      2.   Apache had no obligation to accommodate Plaintiff because she cannot establish the
      "disability" element of her *prima facie* ADA case. ..................................................... 12

      3.   Plaintiff admits that Apache provided Plaintiff with the accommodations she requested.
      ...................................................................................................................................... 15

   C.   The Court should grant summary judgment on Plaintiff's discrimination claims ............ 16

      1.   While Apache assumes Plaintiff can meet the prima facie case for race/color
      discrimination, she cannot establish a *prima facie* case for disability discrimination. ............ 17

      2.   Apache has articulated a legitimate, nondiscriminatory reason for its decision to
      terminate Plaintiff's employment. ............................................................................... 18

         a.   Plaintiff lacks any admissible evidence that Apache's legitimate nondiscriminatory
         reason for terminating Plaintiff's employment is untrue. .................................................. 19

         b.   Plaintiff lacks admissible evidence to demonstrate that a discriminatory motive
         motivated Apache's termination decision. ....................................................................... 20

D.      The Court should grant summary judgment on Plaintiff's Title VII retaliation claim. 22

  1.      Opposing or reporting alleged false reporting of funds to the federal government does not constitute protected activity under Title VII. ..................................................................23

  2.      Plaintiff lacks admissible evidence to raise a genuine issue of material fact that Apache's legitimate, non-retaliatory reasons for terminating Plaintiff's employment are pretexts for retaliation or that her complaints of race discrimination were but for causes of her termination. ....................................................................................................................23

Conclusion ...................................................................................................................... 24

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allison v. Lyondell Chem. Co.*,
    No. 4:21-CV-03204, 2023 WL 4137484 (S.D. Tex. June 22, 2023) ........................................ 17

*Austin v. Kroger Tex., L.P.*,
    864 F.3d 326 (5th Cir. 2017) ...................................................................................................... 19

*Bercovitch v. Baldwin Sch., Inc.*,
    133 F.3d 141 (1st Cir. 1998) ............................................................................................... 14, 15

*Brown v. Am. First Nat'l Bank*,
    No. 4:23-CV-01722, 2025 WL 407859 (S.D. Tex. Feb. 5, 2025) (Hoyt, J.) ........................... 20

*Brown v. CSC Logic, Inc.*,
    82 F.3d 651 (5th Cir. 1996) ...................................................................................................... 21

*Brown v. Wal-Mart Stores E., L.P.*,
    969 F.3d 571 (5th Cir. 2020) .............................................................................................. 20, 22

*Castaneda v. City of Albuquerque*,
    276 F. Supp. 3d 1152 (D.N.M. 2016) ................................................................................. 14, 15

*Caver v. City of Trenton*,
    420 F.3d 243 (3d Cir. 2005) ....................................................................................................... 8

*Clark v. Champion Nat'l Sec., Inc.*,
    952 F.3d 570 (5th Cir. 2020) .................................................................................................. 4, 12

*Crawford v. Formosa Plastics Corp., La.*,
    234 F.3d 899 (5th Cir. 2000) ...................................................................................................... 19

*Davidson v. Midelfort Clinic, Ltd.*,
    133 F.3d 499 (7th Cir. 1998) ...................................................................................................... 15

*Daywalker v. UTMB at Galveston*,
    No. 22-40813, 2024 WL 94297 (5th Cir. Jan. 19, 2024) (per curiam) ...................................... 10

*DeAngelis v. El Paso Mun. Police Officers' Ass'n*,
    51 F.3d 591 (5th Cir. 1995) ........................................................................................................ 3

*Delavel v. PTech Drilling Tubulars, LLC*,
    824 F.3d 476 (5th Cir. 2016) ...................................................................................................... 18

i

*DeMar v. Car-Freshner Corp.*,
    49 F. Supp. 2d 84 (N.D.N.Y. 1999) ................................................................. 14, 15

*EEOC v. Agro Distrib., LLC*,
    555 F.3d 462 (5th Cir. 2009) ........................................................................... 16

*EEOC v. Chevron Phillips Chem. Co.*,
    570 F.3d 606 (5th Cir. 2009) ........................................................................... 13

*Ernst v. Methodist Hosp. Sys.*,
    1 F.4th 333 (5th Cir. 2021) ............................................................................. 17

*Faragher v. City of Boca Raton*,
    524 U.S. 775 (1998) ................................................................................... 3, 8, 9

*Frederick v. Dupont Specialty Prods. USA, LLC*,
    No. 4:22-CV-02331, 2023 WL 8623004 (S.D. Tex. Dec. 13, 2023) (Hoyt, J.) ................. 12, 17

*Galvan v. City of Bryan*,
    367 F. Supp. 2d 1081 (S.D. Tex. 2004),
    *aff'd*, 121 F. App'x 567 (5th Cir. 2005) ............................................................ 14

*Grelle v. City of Windcrest*,
    539 F. Supp. 3d 657 (W.D. Tex. 2021) (Rodriguez, J.) ........................................... 21

*Hackett v. United Parcel Serv.*,
    736 F. App'x 444 (5th Cir. 2018) (per curiam) .................................................... 22

*Haire v. Bd. of Supervisors of La. State Univ. Agric. & Mech. Coll.*,
    719 F.3d 356 (5th Cir. 2013) ........................................................................... 19

*Hale v. King*,
    642 F.3d 492 (5th Cir. 2011) (per curiam) ......................................................... 13

*Harry v. Dall. Hous. Auth.*,
    662 F. App'x 263 (5th Cir. 2016) (per curiam) .................................................... 17

*Harvey v. Chevron U.S.A., Inc.*,
    961 F. Supp. 1017 (S.D. Tex. 1997) (Crone, J.) ................................................... 23

*Henson v. Bell Helicopter Textron, Inc.*,
    128 F. App'x 387 (5th Cir. 2005) ..................................................................... 11

*Henson v. U.S. Foodservice, Inc.*,
    588 F. App'x 121 (3d Cir. 2014) ........................................................................ 8

*Herster v. Bd. of Supervisors of La. State Univ.*,
    887 F.3d 177 (5th Cir. 2018) ........................................................................................1

*Johnson v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. Coll.*,
    90 F.4th 449 (5th Cir. 2024) .........................................................................................3

*Johnson v. Sedgwick Cnty. Sheriff's Dep't*,
    461 F. App'x 756 (10th Cir. 2012) .............................................................................15

*Khalfani v. Balfour Beatty Cmtys., L.L.C.*,
    595 F. App'x 363 (5th Cir. 2014) (per curiam) .........................................................16

*Landgraf v. USI Film Prods.*,
    968 F.2d 427 (5th Cir. 1992), *aff'd*, 511 U.S. 244 (1994) ............................................6

*LeMaire v. La. Dep't of Transp. & Dev.*,
    480 F.3d 383 (5th Cir. 2007) ..................................................................................... 20

*Long v. Eastfield Coll.*,
    88 F.3d 300 (5th Cir. 1996) ........................................................................................23

*Matthews v. GEICO*,
    No. CIV.A. H-09-CV-609, 2010 WL 1644713 (S.D. Tex. Apr. 23, 2010)
    (Hoyt, J.) ...............................................................................................................19, 22

*McConathy v. Dr. Pepper/Seven Up Corp.*,
    131 F.3d 558 (5th Cir. 1998) ....................................................................................9, 10

*McDonnell Douglas Corp. v. Green*,
    411 U.S. 792 (1973) .....................................................................................................17

*Mechelle v. USA Indus., Inc.*,
    No. 4:19-CV-02679, 2021 WL 3860745 (S.D. Tex. Aug. 30, 2021) (Hoyt, J.),
    *aff'd*, No. 21-20481, 2022 WL 1262128 (5th Cir. Apr. 28, 2022) .......................22, 23

*Mueck v. La Grange Acquisitions, L.P.*,
    75 F.4th 469 (5th Cir. 2023) .......................................................................................13

*Nabhan v. Ind. State Police*,
    760 F. Supp. 3d 674 (N.D. Ind. 2024) .........................................................................8

*Noll v. Int'l Bus. Machs. Corp.*,
    787 F.3d 89 (2d Cir. 2015) ..........................................................................................16

*Oliphant v. City & County of San Francisco*,
    No. C-08-5048 MMC, 2010 WL 1875711 (N.D. Cal. May 7, 2010) ...........................7

*Oncale v. Sundowner Offshore Servs., Inc.,*
    523 U.S. 75 (1998) ........................................................................................................7

*Ray v. Tandem Computs., Inc.,*
    63 F.3d 429 (5th Cir. 1995) ......................................................................................18

*Reagan v. Piping Tech. & Prods. Inc.,*
    No. 4:13-CV-1823, 2014 WL 4967269 (S.D. Tex. Oct. 2, 2014) (Hoyt, J.) ...........11

*Reeves v. Sanderson Plumbing Prods., Inc.,*
    530 U.S. 133 (2000) .................................................................................................19

*Russell v. Phillips 66 Co.,*
    184 F. Supp. 3d 1258 (N.D. Okla. 2016),
    *aff'd*, 687 F. App'x 748 (10th Cir. 2017)..................................................................15

*Sandstad v. CB Richard Ellis, Inc.,*
    309 F.3d 893 (5th Cir. 2002) .................................................................................. 20

*Simmons v. U.S. Steel Corp.,*
    No. 2:17-CV-272-JEM, 2020 WL 636490 (N.D. Ind. Feb. 11, 2020) .......................8

*Skinner v. Brown,*
    951 F. Supp. 1307 (S.D. Tex. 1996) (Atlas, J.),
    *aff'd*, 134 F.3d 368 (5th Cir. 1997) ...........................................................................9

*Smith v. Harris County,*
    956 F.3d 311 (5th Cir. 2020)...................................................................................12

*Smithson v. Union Pac. R.R. Co.,*
    602 F. Supp. 3d 974 (W.D. Tex. 2022) (Rodriguez, J.) ..........................................11

*Soledad v. U.S. Dep't of Treasury,*
    304 F.3d 500 (5th Cir. 2002) ..................................................................................10

*St. Clair-Sears v. Lifechek Staff Servs., Inc.,*
    No. 4:12-CV-52, 2013 WL 4487531 (S.D. Tex. May 30, 2013) (Hoyt, J.) ..............11

*Strife v. Aldine Indep. Sch. Dist.,*
    138 F.4th 237 (5th Cir. 2025) ............................................................................3, 12

*Thompson v. Microsoft Corp.,*
    2 F.4th 460 (5th Cir. 2021) ......................................................................................9

*Turner v. Baylor Richardson Med. Ctr.,*
    476 F.3d 337 (5th Cir. 2007) ............................................................................10, 16

*Vertrees v. Baylor All Saints Med. Ctr.*,
　　No. 4:06-CV-177-Y, 2007 WL 9718183 (N.D. Tex. Nov. 7, 2007) (Means, J.)......................15

*Walker v. Thompson*,
　　214 F.3d 615 (5th Cir. 2000) .......................................................................................10

*Walton v. Bisco Indus., Inc.*,
　　119 F.3d 368 (5th Cir. 1997) .......................................................................................18

*Wantou v. Wal-Mart Stores Tex., L.L.C.*,
　　23 F.4th 422 (5th Cir. 2022) ..........................................................................................3

*Weller v. Citation Oil & Gas Corp.*,
　　84 F.3d 191 (5th Cir. 1999) ............................................................................................3

*Whittington v. Harris County*,
　　No. 24-20172, 2025 WL 1864956 (5th Cir. July 7, 2025) (per curiam)...................16

**Statutes**

42 U.S.C. § 2000e-3 ....................................................................................................23

42 U.S.C. § 12102(1) ...................................................................................................13

42 U.S.C. § 12102(2)(A) .............................................................................................13

Americans with Disabilities Act of 1990 ................................................................. *passim*

Civil Rights Act of 1964 Title VII ........................................................................... *passim*

**Other Authorities**

29 C.F.R. § 1630.2(j)(1)(ii) ..........................................................................................13

Dark Side, Oxford English Dictionary (2021),
　　https://www.oed.com/dictionary/dark-side_n (visited Sept. 18, 2025) ..................7

Empire Fan Productions, "*I'll Never Turn to the Dark Side. You Failed, Your
　　Highness. I Am a Jedi like My Father Before Me.*", YouTube (Nov. 19, 2019),
　　https://www.youtube.com/watch?v=1JuHWuq0_e8 (at 0.05) (visited Sept.
　　18, 2025)] .....................................................................................................................7

Fed. R. Civ. P. 56(a)......................................................................................................1

**Nature and Stage of the Proceeding/Summary of the Argument**

This is an employment discrimination case.  Plaintiff Amunique Love ("Plaintiff"), an "African-American … who is dark in skin tone" and claims to have "Attention Deficit Hyperactivity Disorder" ("ADHD") [Doc. 10, *Plaintiff's First Amended Complaint* ("*Pl. Compl.*"), at ¶ 5.1], has sued her former employer, Apache Corporation ("Apache"), and its holding company that has no employees, APA Corporation ("APA") under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Americans with Disabilities Act ("ADA").  The Court should grant Apache's Motion for Summary Judgment because:

- Hostile Work Environment Claim.  Plaintiff's allegations, even if taken as true, do not reflect an actionable hostile work environment based on Plaintiff's claimed disability, race or color.

- Failure to Accommodate under the ADA.  The claim is time barred, Plaintiff is not disabled, and Apache reasonably accommodated Plaintiff's claimed disability even though she did not have one.

- Race/Color and Disability Discrimination.  Plaintiff is not disabled, Plaintiff has no direct evidence of discrimination, and Plaintiff lacks any admissible evidence to meet her pretext burden because Plaintiff lacks evidence to raise an issue of material fact that Apache's reasons for terminating her employment are false or motivated by her race, color, or claimed disability.

- Retaliation.  Plaintiff lacks admissible evidence raising a material fact issue that her allegedly protected activity was causally related to her termination, or that but for her allegedly protected activity, Apache would not have terminated her employment when it did.

**Issues Requiring Resolution/Standard of Review**

The Court must decide if there is admissible evidence raising a genuine issue of material fact on Plaintiff's Title VII and ADA claims.  The Court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," FED. R. CIV. P. 56(a), which the Fifth Circuit will review *de novo*, *Herster v. Bd. of Supervisors of La. State Univ.*, 887 F.3d 177, 184 (5th Cir. 2018).

## Statement of Undisputed Material Facts

From March 21, 2022 until the termination of her employment on March 31, 2023, Apache employed Plaintiff as a Supplier Diversity Lead in Houston. [*Pl. Compl.* at ¶ 5.1]. During that time, Plaintiff's direct supervisor was Brenda Udunna, whom Plaintiff describes in her Complaint as someone who, like Plaintiff, is a "dark skinned African American." [*Pl. Compl.* at ¶¶ 5.3 & 5.8; **Exhibit A**, Excerpts from Vol. I of Deposition of Brenda Udunna ("*Udunna Dep. I*") at 23:21-23]. Ms. Udunna was also the Apache employee who decided to terminate Plaintiff's employment. **Exhibit B**, Excerpts from Vol. II of Deposition of Brenda Udunna ("*Udunna Dep. II*") at 62:16 – 64:14, 69:19 – 70:9, 71:17 – 72:13, 98:2-8, 99:9-17]. While admitting that Ms. Udunna is, like Plaintiff, is a "dark skinned African-American," she nevertheless contends, among other things, that Apache's termination decision was motivated by Plaintiff's race and/or color. [*Pl. Compl.* at ¶¶ 5.8, 6.2]. The summary judgment evidence proves, however, that Ms. Udunna decided to terminate Plaintiff's employment solely because Plaintiff was unwilling or unable to perform key job duties in accordance with Ms. Udunna's stated expectations, which consequently required others in the department (including Ms. Udunna) to complete the tasks assigned to Plaintiff. [*Udunna Dep. II* at 66:1-7 at 62:16 – 64:14, 66:1-7, 69:19 – 70:9, 71:17 – 72:13, 98:2-8, 99:9-17].

## Argument and Authorities

### A.    The Court should grant summary judgment on Plaintiff's claim for hostile work environment.

Plaintiff asserts a claim for hostile work environment based on her claimed disability and her race/color. [*Pl. Compl.* at ¶¶ 6.3 & 6.7]. Where, as here, the claimed harassment stems from someone other than a supervisor with immediate or successively higher authority over the plaintiff, the plaintiff must offer admissible summary judgment evidence showing: (1) that "she belongs to

a protected group"; (2) that she "was subjected to unwelcome harassment"; (3) based upon race or her claimed disability; (4) "the harassment affected a term, condition, or privilege of [her] employment"; and (5) that her "employer knew, or should have known, of the harassment and failed to take prompt remedial action that was reasonably calculated to end the harassment." *Strife v. Aldine Indep. Sch. Dist.*, 138 F.4th 237, 248 (5th Cir. 2025); *Johnson v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. Coll.*, 90 F.4th 449, 455 (5th Cir. 2024).

Employees may not sue their employer for every perceived workplace slight. To be actionable, the allegedly discriminatory conduct must be so extremely severe or pervasive as to create a work environment that is "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998); *Strife*, 138 F.4th at 248. To decide this, courts look to the totality of the circumstances, including non-dispositive factors such as: (1) the conduct's frequency; (2) "its severity"; (3) whether the conduct "is physically threatening or humiliating" as opposed to "a mere offensive utterance"; and (4) whether the conduct "unreasonably interferes with an employee's work performance." *Wantou v. Wal-Mart Stores Tex., L.L.C.*, 23 F.4th 422, 433 (5th Cir. 2022) (quotations omitted). Overall, the challenged conduct must create an environment that is "so egregious as to alter the conditions of employment and destroy the [plaintiff's] equal opportunity in the workplace." *DeAngelis v. El Paso Mun. Police Officers' Ass'n*, 51 F.3d 591, 593 (5th Cir. 1995). "Simple teasing, offhand comments, and isolated incidences (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher*, 524 U.S. at 788 (citation modified). Stated another way, mere name-calling or occasional "epithet[s]," or "boorish and offensive" comments which "sporadically wound[] or offend[]" are insufficient to show a hostile work environment. *Weller v.*

*Citation Oil & Gas Corp.*, 84 F.3d 191, 194 (5th Cir. 1999). Similarly insufficient is evidence reflecting "a disagreement with an employer over terms of employment or an accommodation" for a claimed disability. *Clark v. Champion Nat'l Sec., Inc.*, 952 F.3d 570, 585 (5th Cir. 2020).

Although Plaintiff alleges that she endured "daily insults, comments and remarks," [*Pl.'s Compl.* ¶¶ 6.3 & 6.7], her discovery responses and deposition testimony disclose but three specific incidents over a one-year period, none of which rise to an actionable level, even if combined. Moreover, Plaintiff admits that none of these incidents adversely impacted Plaintiff's job performance. Indeed, Plaintiff believes that during the entire time she worked for Apache—from day one to her last day—she substantially exceeded all of Apache's expectations for her job performance and met 100% of every goal Apache set for her, notwithstanding the work environment she claims existed. [**Exhibit C**, Excerpts from Deposition of Amunique Love ("*Pl. Dep.*") at 42:4 – 43:24, 44:10 – 48:18; **Exhibit C-1**, *Pl. Dep.* Ex. 1, 2022 Performance Review]. Below are the specifics of the three claimed incidents that Plaintiff has identified in her pleadings and discovery responses.

The Johnathan Jenkins Incident. On March 25, 2022, Plaintiff asked Ms. Udunna if she could install a "translating, read-aloud computer feature" on her Apache-issued computer. [*Pl. Compl.* at ¶ 5.3; *Pl. Dep.* at 31:1-7]. Plaintiff specifically requested three applications: Google Translate, Read Aloud and Grammarly. [*Pl. Dep.* at 39:12-14]. Ms. Udunna told Plaintiff to submit her request to Apache's Information Technology Department whereupon Johnathan Jenkins, a white Apache IT staff member, denied Plaintiff's request on March 28, 2022 "and refused to provide [her with] any alternatives." [*Pl. Compl.* at ¶ 5.4].

Plaintiff continued to request access to these features through April and May 2022. During a conversation in Ms. Udunna's office that Plaintiff had with Mr. Jenkins at some point on or before

May 9, 2022, Plaintiff reminded Mr. Jenkins that she was asking for these extensions for "an ADA reason," to which (Plaintiff claims) Mr. Jenkins yelled "do you even have a disability?" within earshot of others. [*Id.*; *Pl. Dep.* at 40:7-23, 119:16-20]. On May 9, 2022, Mr. Jenkins apologized to Plaintiff during a conversation between them which Plaintiff secretly recorded.[1] [*Pl. Dep.* at 251:12 – 252:8]. Plaintiff believes that Mr. Jenkins' apology was "another moment of microaggression," as well as an instance of "harassment" and "retaliation" in part because he hounded Plaintiff to accept his apology for the event. [*Pl. Dep.* at 35:24 – 36:10, 251:12-19].

Nine days later, on May 18, 2022, Plaintiff complained to Veronica Cotton, an African-American employee in Apache's human resources department, about the Jenkins incident, in another meeting that Plaintiff secretly recorded.[2] Ms. Cotton offered to speak to Mr. Jenkins' direct supervisor, and to Ms. Udunna as well, but Plaintiff declined, saying that she did not want the issue to "become an investigation or anything."[3] Instead, Plaintiff was satisfied if Apache ensured that IT staff other than Mr. Jenkins would be assigned to handle any IT issues she may later have in the future, so that is what Apache put in place. [**Exhibit F**, Excerpts from Deposition of Veronica Cotton ("*Cotton Dep.*"), at 150:25 – 151:17]. Plaintiff wrongly assumes Apache never reprimanded Mr. Jenkins because Apache did not fire him. [*Pl. Dep.* at 251:20 – 253:14]. But not only did Apache reprimand Mr. Jenkins, [*Cotton Dep.* at 164:3 – 165:14, 172:9-20], the law "does

---

[1]    **Exhibit D**, Audio Recording dated May 9, 2022 produced by Plaintiff ("May 9th Audio Recording"). That secretly recorded conversation is saved in an audio file that is being submitted to the Court via a thumb drive, along with a transcript that staff employed with Defendants' counsel created to aid the Court. (The transcript is not being submitted as summary judgment evidence). The apology starts at time-stamp 0.00 and goes to 0.55.

[2]    **Exhibit E**, Audio Recording dated May 18, 2022 Produced by Plaintiff ("May 18th Audio Recording"). Again, this secretly recorded conversation is saved in an audio file that is being submitted to the Court via a thumb drive, along with a transcript that staff employed with Defendants' counsel created to aid the Court. (The transcript is not being submitted as summary judgment evidence).

[3]    *Id.*, at timestamp 01:31.

not require that an employer use the most serious sanction available to punish an offender, particularly where, as here, this was the first documented offense by an individual employee." *Landgraf v. USI Film Prods.*, 968 F.2d 427, 430 (5th Cir. 1992) (Title VII case), *aff'd*, 511 U.S. 244 (1994).  Besides, the verbal reprimand was clearly effective, since Plaintiff ever complained to Apache about Mr. Jenkins thereafter.  [*Cotton Dep.* at 162:6-10].

The "Dark Side" Comment and Hip-Hop Lyrics Comment.  Plaintiff asserts that in August 2022, two white, female co-workers (Rachael Adams and Sara Robicheaux) were talking outside Plaintiff's office within earshot, and Ms. Adams described Ms. Robicheaux's decision to take a job in Apache's supply chain department where Plaintiff worked as moving to "the dark side." [*Pl. Dep.* at 241:7 – 245:23; *Pl. Compl.* at ¶ 5.8].  Plaintiff *presumed* the "dark side" reference was a reference to Plaintiff, Ms. Udunna, and another co-worker named Dionne Watson.  [*Pl. Dep.* at 241:7 – 245:23; **Exhibit G**, Excerpts from Love's Second Amended Answers to Apache's Interrogatories at No. 14 ("*Pl. Interrog. Answers*"); *Pl. Compl.* at ¶ 5.8].  Plaintiff complained to Ms. Cotton, who works in Apache's Human Resources Department and to her direct supervisor, Ms. Udunna.  [*Pl. Dep.* at 242:9 – 243:13, 245:16-23].  Ms. Cotton said that if Plaintiff's interpretation of the incident was true, then the comment was "unacceptable."  [*Pl. Dep.* at 243:3-13].  Plaintiff also claims that in a meeting after the "dark side" comments, Ms. Robicheaux "quoted hip-hop lyrics of Black artists to make the analogy to work matter" and then asked Plaintiff "if she understood such phrases better." [*Pl. Compl.* at ¶ 5.9].

Heffner's "disregard for Plaintiff's boundaries and wellbeing."  Plaintiff claims that on one occasion in December 2022, Apache employee David Hefner repeatedly contacted Plaintiff by phone to see if she would be attending a meeting of the Apache Black Professionals Network, even though Mr. Heffner knew Plaintiff was on scheduled vacation at the time. [*Pl. Interrog. Answers* at

No. 14].  Plaintiff felt that Mr. Heffner's conduct was "microaggressive" and "demonstrate[ed] a disregard for Plaintiff's boundaries and wellbeing."  [*Id.*; *Pl. Dep.* at 32:24 – 33:2].  Plaintiff does not, however, appear to ascribe racial motivations to the incident.

1.     The "Dark Side" and Hip-Hop Lyrics comments.

Although Plaintiff assumed the worst when hearing the "dark side" and hip-hop lyrics comments, the law requires the Court to judge such comments "from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances," including a "careful consideration of the social context in which particular behavior occurs and is experienced by its target."  *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998) (citation modified). This requirement is a "crucial" component of hostile work environment cases to "ensure that courts and juries do not mistake ordinary socializing in the workplace . . . for discriminatory conditions of employment."  *Id.* (citation modified).

To that end, most reasonable people believe that the "dark side"[4] is a reference to the "well-known phrase in popular culture, having its origin in the first, 1977, 'Star Wars' film and pertaining to a dualistic philosophy."  *Oliphant v. City & County of San Francisco*, No. C-08-5048 MMC, 2010 WL 1875711, at *3 (N.D. Cal. May 7, 2010) (finding that employee's use of the term "dark side" was not evidence of racial discrimination because the comment is "not, on its face, racial" and even if it was ambiguous, plaintiff failed to provide evidence to support inference that given context of statement, declarant was referring to race or ethnicity of any person).  Moreover,

---

[4]     The Oxford English Dictionary defines the "dark side" as a noun usually used as a reference to "the dark side of the Force" – the evil aspect of a mystical universal energy field in the fictional universe of the Star Wars films. [Dark Side, OXFORD ENGLISH DICTIONARY (2021), https://www.oed.com/dictionary/dark-side_n (visited Sept. 18, 2025). *See also* Empire Fan Productions, "*I'll Never Turn to the Dark Side. You Failed, Your Highness. I Am a Jedi like My Father Before Me.*", YouTube (Nov. 19, 2019), https://www.youtube.com/watch?v=1JuHWuq0_e8 (at 0.05) (visited Sept. 18, 2025)].

the fact that the comment was not directed to Plaintiff, but merely overheard, is a factor that prevents the event from being considered actionable.  *See Caver v. City of Trenton*, 420 F.3d 243, 263 (3d Cir. 2005) ("[C]omments referring to other individuals that [are] merely overheard are the sorts of 'offhanded comments and isolated incidents' that the Supreme Court in *Faragher* cautioned should not be considered severe or pervasive enough to constitute a hostile work environment." (internal citation omitted)).  Similarly, the hip-hop lyrics comment cannot be presumed to have carried racial or color animus sufficient to create a hostile work environment. *See Henson v. U.S. Foodservice, Inc.*, 588 F. App'x 121, 123–24, 126–27 (3d Cir. 2014) (affirming summary judgment on African-American plaintiff's racially hostile work environment claim where plaintiff's supervisor asked if plaintiff and other African-American employees were eating chicken and drinking grape soda, joked about African–American stereotypes and referred to his own African–American stepchildren listening to rap music); *Nabhan v. Ind. State Police*, 760 F. Supp. 3d 674, 695 (N.D. Ind. 2024) (finding that supervisor's playing of rap song from Chicagoland area artist and asking plaintiff to ask if he knew the artist was unrelated to his race and did not show actionable hostile work environment); *Simmons v. U.S. Steel Corp.*, No. 2:17-CV-272-JEM, 2020 WL 636490, at *6 (N.D. Ind. Feb. 11, 2020) (fact that members of management would sing rap lyrics in front of African-American plaintiff held insufficient to create a genuine issue of material fact on hostile work environment).  And Mr. Heffner's calls to Plaintiff to see if she would be attending a meeting of an organization in which Plaintiff participated is untethered to Plaintiff's race or color, even though the organization that was meeting was the Apache Black Professionals Network.

Even if one assumes these comments carried racial undertones, they are still insufficient to create an actionable hostile work environment.  "Title VII was only meant to bar conduct that is

so severe and pervasive that it destroys a protected classmember's opportunity to succeed in the workplace, and therefore conduct that only sporadically wounds or offends but does not hinder an employee's performance is not actionable." *Skinner v. Brown*, 951 F. Supp. 1307, 1322 (S.D. Tex. 1996) (Atlas, J.) (citation modified), *aff'd*, 134 F.3d 368 (5th Cir. 1997).

### 2.    The Jenkins Incident.

The Jenkins incident is similarly insufficient to support an actionable claim for hostile work environment based on disability.  At best, the Jenkins comment was a one-off comment by a non-supervisor that constitutes an insufficient, isolated instance of "rude" treatment; it is not conduct that constitutes an actionable hostile work environment, which is only created where the conduct is "extreme." *Faragher*, 524 U.S. at 788.

### 3.    Comparison of Fifth Circuit authority.

The conclusion that Plaintiff's hostile work environment claims fail as a matter of law is shown by a comparison of Plaintiff's facts with relevant Fifth Circuit authorities.  For instance, in *Thompson v. Microsoft Corp.*, the Fifth Circuit concluded that the plaintiff failed to show an actionable hostile work environment based on his autism where, among other things, his supervisor told the plaintiff that because of the plaintiff's autism, the plaintiff should "seek a different career" and that plaintiff was removed from a coveted work assignment because of his autism.  2 F.4th 460, 471 (5th Cir. 2021).  Likewise, in *McConathy v. Dr. Pepper/Seven Up Corp.*, the Fifth Circuit found that insensitive and rude comments, harsh words, or "cold-shouldering" from co-workers or supervisors were insufficient to show an actionable ADA hostile work environment, even where those comments included a supervisor's angry comment that she "better get well this time" when the plaintiff approached him regarding need for additional surgery, that "he would no longer tolerate her health problems," and his statement that it was inappropriate for Plaintiff to make

extensive use of company benefits programs given her position as benefits manager. 131 F.3d 558, 560, 563-64 (5th Cir. 1998) (per curiam). Similarly, in *Soledad v. U.S. Dep't of Treasury*, comments from the plaintiff's supervisor that he did not believe the plaintiff was disabled, derogatory comments to the plaintiff and others about the plaintiff's condition, and the employer's prevention of the plaintiff from attending therapy sessions were all deemed insufficient to state a hostile workplace claim under the ADA. 304 F.3d 500, 502–03 (5th Cir. 2002).

The Fifth Circuit sets a similarly high bar in cases alleging a hostile work environment based on race. *See Daywalker v. UTMB at Galveston*, No. 22-40813, 2024 WL 94297, at *10 (5th Cir. Jan. 19, 2024) (per curiam) (affirming summary judgment on an African-American plaintiff's hostile work environment claim where the evidence showed that one supervisor "made a handful of statements offensive to employees of color over the span of a few years" separated by months); *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 348 (5th Cir. 2007) (affirming dismissal of African-American plaintiff's racially hostile work environment claim where plaintiff alleged that over just a few weeks, plaintiff's Caucasian supervisor: (a) commented that inner-city children were "ghetto children"; (b) stated that African-American students could not qualify for regular university admission so they had to take night classes; and (c) was surprised when learning that the plaintiff shopped at an upscale mall and drove a Volvo). Fifth Circuit cases finding fact issues on racially hostile work environment claims set forth far more egregious facts than those Plaintiff alleges. *See, e.g., Walker v. Thompson*, 214 F.3d 615, 619–21, 626–28 (5th Cir. 2000) (finding fact issue on racially hostile work environment claim where two African-American plaintiffs were frequently subjected to comparisons to slaves and monkeys, endured derisive remarks regarding their African heritage and patently offensive remarks regarding the hair of African–Americans, and were subjected

to conversations between co-worker and supervisor referring to the plaintiffs specifically, and minorities generally, using racially discriminatory epithets).

Considering the frequency of the alleged discriminatory conduct, its severity, whether it was physically threatening or humiliating or merely an offensive utterance, and whether it interfered with Plaintiff's work performance, there is no genuine material fact issue with respect to Plaintiffs hostile work environment claims.  Consequently, the Court should grant summary judgment and dismiss Plaintiff's hostile work environment claims.  *Reagan v. Piping Tech. & Prods. Inc.*, No. 4:13-CV-1823, 2014 WL 4967269, at *8 (S.D. Tex. Oct. 2, 2014) (Hoyt, J.) (granting employer's motion for summary judgment on racially hostile work environment claim where Caucasian plaintiff alleged that African-American supervisor once told him not to "plop your big white ass in her [another employee's] chair" because "no reasonable factfinder could conclude that [the supervisor's] remark was so frequent or so severe to interfere with [the plaintiff's] work performance or otherwise alter the terms of his employment."); *St. Clair-Sears v. Lifechek Staff Servs., Inc.*, No. 4:12-CV-52, 2013 WL 4487531, at *5 (S.D. Tex. May 30, 2013) (Hoyt, J.) (finding no actionable sexually hostile work environment where supervisor rubbed plaintiff's back and buttocks, "stood so close that the plaintiff felt his erection", and "sent her six notes, asking her out on dates").

## B.      The Court should grant summary judgment on Plaintiff's failure to accommodate claim under the ADA.

### 1.      Plaintiff's failure to accommodate claim is time-barred.

An employee asserting a failure to reasonably accommodate under the ADA must file an EEOC charge within 300 days of the employer's initial denial of the requested accommodation. *Henson v. Bell Helicopter Textron, Inc.*, 128 F. App'x 387, 391 (5th Cir. 2005); *Smithson v. Union*

*Pac. R.R. Co.*, 602 F. Supp. 3d 974, 981–82 (W.D. Tex. 2022) (Rodriguez, J.). Plaintiff filed her one and only charge of discrimination on November 29, 2023. [*Pl. Dep.* at 212:19 – 213:6; *Pl. Compl.* at ¶ 4.1; **Exhibit C-11**, *Pl. Dep. Ex. 11*, Plaintiff's EEOC Charge]. Plaintiff admits that Apache, through Mr. Jenkins, denied Plaintiff's request for access to the three applications in late March 2022, and Plaintiff claims she continued to seek access to those applications through May 2022. [*Pl. Compl.* at ¶ 5.3 to ¶ 5.5]. Because Plaintiff admits that the Jenkins incident and Apache's denial of her requested accommodations took place in March 2022, Plaintiff's claim involving those events, filed well outside the 300-day limit, is time-barred. *See Frederick v. Dupont Specialty Prods. USA, LLC*, No. 4:22-CV-02331, 2023 WL 8623004, at *2 (S.D. Tex. Dec. 13, 2023) (Hoyt, J.).

> 2. <u>Apache had no obligation to accommodate Plaintiff because she cannot establish the "disability" element of her *prima facie* ADA case.</u>

A claim asserting a failure to reasonably accommodate an employee's claimed disability has "three elements: (1) the plaintiff is a qualified individual with a disability, (2) the disability and its consequential limitations were known by the covered employer, and (3) the employer failed to make reasonable accommodations for such known limitations." *Strife*, 138 F.4th at 245 (citation modified); *Smith v. Harris County*, 956 F.3d 311, 317 (5th Cir. 2020). An employer has no duty of reasonable accommodation unless the plaintiff can show that the plaintiff had a qualifying "disability" as that term is defined in the ADA. *Clark*, 952 F.3d at 587 (plaintiff's failure to show he was "qualified individual" under ADA was "fatal to his failure-to-accommodate claim"). While Plaintiff claims she is "disabled" because she claims to have been diagnosed in 2017 as having Attention Deficient Hyperactivity Disorder or ADHD, [*Pl. Compl.* at ¶ 5.1], she lacks any admissible evidence that her ADHD was a qualifying "disability" as that term is defined by the ADA. Thus, Apache had no duty of reasonable accommodation.

The ADA defines a "disability" as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment...." 42 U.S.C. § 12102(1). A qualifying disability is not shown with evidence that a plaintiff may have an impairment. *EEOC v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 614 (5th Cir. 2009). Instead, a plaintiff must demonstrate that the impairment *substantially* limits a major life activity. 42 U.S.C. § 12102(2)(A). "To be substantially limited means to be unable to perform a major life activity that the average person in the general population can perform, or to be significantly restricted in the ability to perform it." *Hale v. King*, 642 F.3d 492, 500 (5th Cir. 2011) (per curiam) (citation modified); 29 C.F.R. § 1630.2(j)(1)(ii). "[W]hether a plaintiff has a [qualifying] disability . . . requires an individualized assessment of the impact of the impairment on an individual's major life activities." *Mueck v. La Grange Acquisitions, L.P.*, 75 F.4th 469, 479 (5th Cir. 2023).

The first item of evidence that dooms Plaintiff's claim is her own admission to Apache that she has <u>never</u> had a disability or a record of a disability. Specifically, Apache asked Plaintiff on the first day of her employment to complete a voluntary survey on whether she was disabled or had a record of disability, and this is how she completed the form:

| Please check one of the boxes below: |
|---|
| ☐ Yes, I Have A Disability, Or Have A History/Record Of Having A Disability |
| ☑ No, I Don't Have A Disability, Or A History/Record Of Having A Disability |
| ☐ I Don't Wish To Answer |

[**Exhibit C-7**, *Plaintiff Dep. Ex.* 7, Plaintiff's March 21, 2022 Voluntary Self-Identification of Disability Form; *Plaintiff Dep.* 147:13 – 148:15]. Plaintiff's admission in this regard makes sense, because while ADHD may qualify as an "impairment" under the ADA, it is not, by itself, a

"disability." *See Bercovitch v. Baldwin Sch., Inc.*, 133 F.3d 141, 155 n18 (1st Cir. 1998) (noting that ADHD is not a learning disability per se); *DeMar v. Car-Freshner Corp.*, 49 F. Supp. 2d 84, 89 (N.D.N.Y. 1999) (holding that ADHD is not, by itself, a disability as defined by the ADA). Indeed, "numerous courts . . . have concluded that ADHD does not limit major life activities sufficiently to raise a claim under the ADA." *Castaneda v. City of Albuquerque*, 276 F. Supp. 3d 1152, 1180 (D.N.M. 2016) (citation modified) (collecting cases).

Even if the Court were to assume Plaintiff could prove that she was diagnosed with ADHD in 2017, the Court should still grant summary judgment because Plaintiff lacks admissible evidence to raise an issue of material fact that the condition substantially limited her performance of any major life activities during her employment with Apache. When asked in her deposition to describe how her ADHD affected her, Plaintiff explained that she asks a lot of questions, she scribbles notes and might fidget when people are talking, might take a little longer to read and comprehend what she is reading and might transpose letters or numbers. [*Pl. Dep.* at 97:1 – 99:1, 108:9 – 109:4]. But despite these claimed effects, Plaintiff earned a bachelor's degree and *two* master's degrees before coming to work at Apache. [*Pl. Dep.* at 8:24 – 9:10, 10:8 – 11:3]. And while employed with Apache, Plaintiff claims that she substantially exceeded all of Apache's expectations for her job performance even though Apache allegedly failed to provide her with the accommodations she requested. [*Pl. Dep.* at 42:4 – 43:24, 44:10 – 48:18; **Exhibit C-1**, *Pl. Dep. Ex.* 1, 2022 Performance Review]. Courts often dismiss ADA claims when a plaintiff with a claimed mental disability shows success in other areas where mental faculties are required, such as school or work activities. *Galvan v. City of Bryan*, 367 F. Supp. 2d 1081, 1089-90 (S.D. Tex. 2004) (Milloy, M.J.) (finding that learning disability did not amount to substantial limitation on learning where record showed plaintiff graduated from high school and held a job during his tenth, eleventh, and twelfth grades),

*aff'd*, 121 F. App'x 567 (5th Cir. 2005); *Bercovitch*, 133 F.3d at 155 (holding that student with ADHD was not disabled where evidence showed student "never experienced significant academic difficulties, and in fact has excelled academically for most of his years" during school); *Vertrees v. Baylor All Saints Med. Ctr.*, No. 4:06-CV-177-Y, 2007 WL 9718183, at *6 (N.D. Tex. Nov. 7, 2007) (Means, J.) (collecting cases and finding that plaintiff with ADHD was not "disabled" under ADA because plaintiff was "able to read, write, graduate from high school and college, and maintain employment.").

Given these undisputed facts, Plaintiff is unable to offer any admissible evidence to raise a fact issue that she was *substantially* limited in performing any major life activity and thus qualified as "disabled" at any point during her employment with Apache.  The Court should therefore grant summary judgment on Plaintiff's claim for disability discrimination, as many other courts have in substantially similar ADA cases involving plaintiffs with ADHD.[5]

3.    <u>Plaintiff admits that Apache provided Plaintiff with the accommodations she requested.</u>

The gravamen of Plaintiff's failure to accommodate claim is Apache's alleged failure to provide Plaintiff with access to three computer applications at work that many non-disabled people use regularly – Grammarly, "Read Aloud" (which converts web-page text to audio) and Google

---

[5]    *Castaneda* 276 F. Supp. 3d at 1180 (collecting cases and finding that "numerous courts . . . have concluded that ADHD does not limit major life activities sufficiently to raise a claim under the ADA." (citation modified)); *see also Bercovitch*, 133 F.3d at 155 (reversing injunction because plaintiff's ADHD was not a "disability"); *Davidson v. Midelfort Clinic, Ltd.*, 133 F.3d 499, 504 (7th Cir. 1998) (affirming summary judgment against ADA plaintiff who failed to proffer sufficient evidence that her attention deficit disorder presently limited her ability to learn); *Johnson v. Sedgwick Cnty. Sheriff's Dep't*, 461 F. App'x 756, 759 (10th Cir. 2012) (affirming summary judgment for employer where plaintiff with ADHD failed to show how condition substantially limited a major life activity); *Russell v. Phillips 66 Co.*, 184 F. Supp. 3d 1258, 1270 (N.D. Okla. 2016) (granting summary judgment brought by employee who claimed to be disabled due to ADHD and depression because plaintiff failed to show that he was substantially limited in the ability to perform any major life activity), *aff'd*, 687 F. App'x 748 (10th Cir. 2017); *DeMar*, 49 F. Supp. 2d at 89 (granting summary judgment on Plaintiff's ADA claim because plaintiff's ADHD did not qualify as an ADA disability).

Translate.[6]   [*Pl Dep.* at 39:12-14, 109:18-25; *Pl. Compl.* at ¶ 5.3; *Pl. Interrog. Answers* at p. 5 (Interrogatory No. 12)].   But Plaintiff admits that Apache allowed Plaintiff to access these applications using her own devices during her employment; Apache simply refused to install them on her Apache-provided computer system for security reasons.   [*Pl. Dep.* at 58:11 – 59:9].   Although Plaintiff would have preferred a different method of accessing the applications, the ADA does not entitle the plaintiff to their preferred or desired accommodation — only a reasonable one.   *EEOC v. Agro Distrib., LLC*, 555 F.3d 462, 471 (5th Cir. 2009); *Noll v. Int'l Bus. Machs. Corp.*, 787 F.3d 89, 98 (2d Cir. 2015).   Because Apache allowed Plaintiff access to the applications, Apache's alleged delay or failure to engage in an interactive process (which is not clearly alleged in Plaintiff's complaint anyway) does not state a valid ADA claim for failure to reasonably accommodate.   *Noll*, 787 F.3d at 98.   The Court should therefore grant summary judgment on Plaintiff's failure to accommodate claim.

## C.    The Court should grant summary judgment on Plaintiff's discrimination claims.

Plaintiff also asserts that Apache discriminated against her because of her alleged disability, her race and her color[7] (although she does not specify the adverse employment action(s) upon which her claims are premised).   [*Pl. Compl.* at ¶¶ 6.2 & 6.5].   A plaintiff may prove a claim of intentional discrimination either by "direct or circumstantial evidence."   *Turner,* 476 F.3d at 345.

---

[6]    Plaintiff has never explained why she demanded access to Google Translate or Grammarly as a reasonable accommodation for her claimed ADHD, as neither an inability to speak certain languages or a need for access to grammar rules qualify as impairments under the ADA.

[7]    Race and color discrimination are two distinct charges.   Although the Fifth Circuit "has rarely addressed color discrimination under Title VII," *Whittington v. Harris County*, No. 24-20172, 2025 WL 1864956, at *3 (5th Cir. July 7, 2025) (per curiam), the same framework applies to race and color discrimination, *Khalfani v. Balfour Beatty Cmtys., L.L.C.*, 595 F. App'x 363, 365 n.1 (5th Cir. 2014) (per curiam).   Apache therefore intends for its arguments against Plaintiff's race discrimination claim to apply equally to Plaintiff's claim for color discrimination.

"Direct evidence" of discrimination is "evidence that, if believed, proves the fact of discriminatory animus without any inferences or presumptions," such as "any statement or document that shows on its face that an improper criterion served as a basis for the adverse employment action." *Harry v. Dall. Hous. Auth.*, 662 F. App'x 263, 266 (5th Cir. 2016) (per curiam).

Here, Plaintiff has no admissible evidence that the adverse employment action about which Plaintiff appears to complain (her termination) was directly tied to or motivated by her claimed disability, her race or her color. The Court must therefore analyze these claims under the burden-shifting framework laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), an approach which this Court knows well, as shown by its prior body of work. *See, e.g., Allison v. Lyondell Chem. Co.*, No. 4:21-CV-03204, 2023 WL 4137484, at *4 (S.D. Tex. June 22, 2023); *Frederick*, 2023 WL 8623004, at *3.

1. While Apache assumes Plaintiff can meet the prima facie case for race/color discrimination, she cannot establish a *prima facie* case for disability discrimination.

To establish a *prima facie* case for race/color discrimination, Plaintiff must demonstrate that she: "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside h[er] protected group or was treated less favorably than other similarly situated employees outside the protected group." *Ernst v. Methodist Hosp. Sys.*, 1 F.4th 333, 339 (5th Cir. 2021) (quotation omitted). Plaintiff has no admissible evidence that others outside her protected categories were treated more favorably under nearly identical circumstances, but Apache concedes, for purposes of summary judgment only, that Plaintiff was in a protected group, and was

discharged and replaced by a female outside Plaintiff's race/color protected categories. Nonetheless, Plaintiff's race/color discrimination claims fail for other reasons, as set forth below.

Plaintiff cannot, however, establish a *prima facie* case for disability discrimination under the ADA. For that, Plaintiff must prove, among other elements, that she "has a disability" at the time of the allegedly adverse employment action. *Delavel v. PTech Drilling Tubulars, LLC*, 824 F.3d 476, 479–80 (5th Cir. 2016). As noted above on pages 12-16 *supra*, Plaintiff has no admissible evidence to prove that she ever had a qualifying "disability" at the time of her termination and thus, her claim for disability discrimination fails at the outset.

2.    <u>Apache has articulated a legitimate, nondiscriminatory reason for its decision to terminate Plaintiff's employment.</u>

After supervising Plaintiff for more than a year, Ms. Udunna was the person who decided to terminate Plaintiff's employment with Apache. [*See supra* at p. 2]. Ms. Udunna made her termination decision because Plaintiff failed to timely complete tasks that Ms. Udunna had assigned her despite being counseled numerous times on the importance of doing so, requiring others (including her supervisor Ms. Udunna) to complete them. [*Udunna Dep. II* at 62:16 – 64:14, 66:1-7, 69:19 – 70:9, 71:17 – 72:13, 98:2-8, 99:9-17]. Moreover, Plaintiff's work was "time and time, over and over again" filled with "incorrect information" and Plaintiff was also nonresponsive and often missing from work without excuse. [*Id.* at 71:1 – 72:4, 91:11-24]. Ms. Udunna's reasons constitute legitimate, nondiscriminatory reasons for Apache's decision to terminate Plaintiff' employment. *Walton v. Bisco Indus., Inc.*, 119 F.3d 368, 370-71 (5th Cir. 1997) (failure to meet known condition of employment held legitimate, non-discriminatory reason); *Ray v. Tandem Computs., Inc.*, 63 F.3d 429, 435-36 (5th Cir. 1995) (poor performance is a legitimate nonretaliatory reason for placing employee on corrective action plan). Therefore, Plaintiff must offer admissible

evidence showing that Apache's articulated reasons are merely pretexts for unlawful disability or race/color discrimination — either by showing that a discriminatory motive more likely motivated her employer's decision or that her employer's explanation is unworthy of credence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000); *Haire v. Bd. of Supervisors of La. State Univ. Agric. & Mech. Coll.*, 719 F.3d 356, 363 (5th Cir. 2013); *Matthews v. GEICO*, No. CIV.A. H-09-CV-609, 2010 WL 1644713, at *11 (S.D. Tex. Apr. 23, 2010) (Hoyt, J.).  Plaintiff lacks any such admissible evidence.

> a.     *Plaintiff lacks any admissible evidence that Apache's legitimate nondiscriminatory reason for terminating Plaintiff's employment is untrue.*

Plaintiff has no admissible evidence to raise a fact issue on whether each of Apache's articulated reasons are unworthy of credence. *See, e.g., Crawford v. Formosa Plastics Corp., La.*, 234 F.3d 899, 902-04 (5th Cir. 2000) (holding that "a plaintiff must present sufficient evidence to find that the employer's asserted justification is false" but noting that a tenuous inference of pretext can still be insufficient to support a reasonable inference of discrimination) (citation modified); *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 335 (5th Cir. 2017) (holding that party may properly move for summary judgment by alleging that nonmovant lacks evidence to support an element essential to nonmovant's claim on which nonmovant has the burden of proof at trial which requires nonmovant to offer admissible evidence raising fact issue on challenged element).  Plaintiff cannot point to any admissible evidence that Plaintiff's job performance in the first quarter of 2023 actually met Ms. Udunna's expectations, that Plaintiff did not exhibit the deficiencies Ms. Udunna identified, or that Plaintiff's performance deficiencies were not the true reason that Ms. Udunna sought the termination of Plaintiff's employment with Apache.  Nor can Plaintiff prove that Ms. Udunna more favorably treated similarly situated employees outside Plaintiff's protected class

who exhibited the same performance problems Plaintiff did.  In other words, Plaintiff lacks any admissible evidence to raise an issue of material fact to show the falsity of Apache's reasons.  At best, Plaintiff can only offer her subjective belief that her job performance met Ms. Udunna's expectations from January 2023 to March 31, 2023 when Apache terminated her employment after her job performance materially worsened following the nine months of training and grace that Ms. Udunna allowed Plaintiff to become familiar with her job and working in a corporate environment in the oil and gas space – something Plaintiff had never before done.  But subjective beliefs and disagreements with performance assessments do not raise fact issues in the pretext analysis, nor are they evidence of employment discrimination or retaliation.  *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 391 (5th Cir. 2007); *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 899 (5th Cir. 2002); *Brown v. Am. First Nat'l Bank*, No. 4:23-CV-01722, 2025 WL 407859, at *2 (S.D. Tex. Feb. 5, 2025) (Hoyt, J.).  Because Plaintiff cannot raise a fact issue on whether Apache's reasons for Plaintiff's termination are false or unworthy of credence, the Court should grant Apache's motion for summary judgment on Plaintiff's discrimination claims.

    b. *Plaintiff lacks admissible evidence to demonstrate that a discriminatory motive motivated Apache's termination decision.*

    Plaintiff also lacks admissible evidence "showing that a discriminatory motive more likely motivated [Apache's] decision."  *Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 577 (5th Cir. 2020) (quotation omitted).  Plaintiff claims that Ms. Udunna learned about Plaintiff's asserted disability through alleged conversations between Plaintiff and Ms. Udunna between Plaintiff's first day in late March 2022 and May 9, 2022 when the Jenkins incident occurred.  [*Pl. Dep.* at 96:14 – 98:1].  But it was not until 2023 when Plaintiff's job performance worsened that Ms. Udunna decided – on her own – to secure Plaintiff's termination from employment.  And perhaps most

importantly, Plaintiff admits in her pleadings that Ms. Udunna, the sole decisionmaker on Apache's termination decision, is a "dark skinned African-American female" just like Plaintiff. [*Pl. Compl.* at ¶¶ 5.8, 6.2; *Pl. Dep.* at 267:21 – 268:7]. Because Plaintiff and Ms. Udunna share the same race and color, these facts give rise to the strongest presumption possible that the "same actor inference" offers – that is, the sole decisionmaker for the termination decision both shares the plaintiff's protected categories and favorably treated the plaintiff with knowledge of the plaintiff's membership in a protected category. *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 658 (5th Cir. 1996) (citation modified); *Grelle v. City of Windcrest*, 539 F. Supp. 3d 657, 667 (W.D. Tex. 2021) (Rodriguez, J.) (citing *Brown*, 82 F.3d at 658).

Moreover, Plaintiff will be unable to cast Ms. Udunna as someone who practices race, color or disability discrimination. Just 18 days before Ms. Udunna terminated Plaintiff's employment, Plaintiff effusively praised Ms. Udunna as a "visionary" "DEI advocate" who, through her "infectious professionalism" and "exemplary leadership" concomitantly "reinforces business equity and redefines sustainability in terms of culture/people by bringing the diversity dividend to fruition" while creating "diversity in thought/process/people" at Apache:



[**Exhibit H**, Love's March 13, 2023 Nomination of Ms. Udunna (Apache-Love000536)].

Because Plaintiff lacks any admissible or probative evidence to raise an issue of material fact that Apache's decision to terminate her employment was false or had anything to do with Plaintiff's race, color, or claimed disability, the Court should grant summary judgment on Plaintiff's race, color, and disability discrimination claims. *See Matthews*, 2010 WL 1644713, at *11 (granting employer's summary judgment motion because plaintiff failed to raise fact issue that employer's explanation was false or based on intentional discrimination).

**D.    The Court should grant summary judgment on Plaintiff's Title VII retaliation claim.**

Plaintiff alleges that Apache retaliated against her in violation of Title VII by terminating her employment after she "complained repeatedly of the discriminatory behaviors, opposed engaging in falsely reporting funds to the federal government, and report[ed] the same to management and HR." [*Pl. Compl.* at ¶¶ 6.9 - 6.10].  Like her other claims, these claims fail as a matter of law.

"The antiretaliation provision of Title VII prohibits an employer from discriminating against an employee or job applicant because that individual opposed any practice made unlawful by Title VII or made a charge, testified, assisted, or participated in a Title VII proceeding or investigation."  *Brown*, 969 F.3d at 576-77 (citation modified).  The same legal standard for discrimination claims applies to retaliation claims under Title VII.  *Hackett v. United Parcel Serv.*, 736 F. App'x 444, 451–52 (5th Cir. 2018) (per curiam).  To establish a *prima facie* case of retaliation under Title VII, Plaintiff "must show that: (1) she participated in an activity protected under [Title VII]; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse action."  *Mechelle v. USA Indus., Inc.*, No. 4:19-CV-02679, 2021 WL 3860745, at *4 (S.D. Tex. Aug. 30, 2021) (Hoyt, J.), *aff'd*, No. 21-20481, 2022 WL 1262128 (5th Cir. Apr. 28, 2022).  To avoid summary judgment, Plaintiff "must show 'a conflict

in substantial evidence on the question of whether the employer would not have taken the action but for the protected activity.'" *Id.* (quotations omitted). As shown below, however, Plaintiff has no admissible evidence to raise a fact issue on her retaliation claim.

      1.    <u>Opposing or reporting alleged false reporting of funds to the federal government does not constitute protected activity under Title VII.</u>

One portion of Plaintiff's retaliation claim fails as a matter of law. Plaintiff's fanciful (and false) allegation that she opposed and reported an alleged false reporting of funds to the federal government does not constitute protected activity under Title VII. An individual engages in protected activity under Title VII when the individual "has opposed any practice made an unlawful employment practice by [Title VII]...." 42 U.S.C. § 2000e-3 (emphasis added). The plaintiff must also show that they harbored an objectively reasonable belief that the employer's conduct was unlawful under Title VII. *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996); *Harvey v. Chevron U.S.A., Inc.*, 961 F. Supp. 1017, 1033 (S.D. Tex. 1997) (Crone, J.) ("[A] plaintiff may not maintain a claim for 'opposition clause' retaliation where the activity about which she complains, even if it occurred, is not actionable under Title VII."). An employer's false reporting of federal funds is not a violation of Title VII and, thus, opposition to such an alleged practice does not state a valid claim for retaliation thereunder. The Court should grant summary judgment on Plaintiff's Title VII retaliation claim to the extent it is premised on activity connected to an alleged "false[] reporting of funds to the federal government." [*Pl. Compl.* at ¶¶ 6.9-6.10].

      2.    <u>Plaintiff lacks admissible evidence to raise a genuine issue of material fact that Apache's legitimate, non-retaliatory reasons for terminating Plaintiff's employment are pretexts for retaliation or that her complaints of race discrimination were but for causes of her termination.</u>

As noted above, Apache's reasons, taken singularly or as a whole, constitute legitimate, nondiscriminatory reasons for its decision to terminate Plaintiff's employment. *See supra* at pp. 18-

19.  And, just as with her claims for race and disability discrimination, Plaintiff lacks any admissible evidence to raise a genuine issue of material fact that Apache's reasons for terminating Plaintiff's employment are pretexts for unlawful retaliation.  Summary judgment is therefore warranted for Plaintiff's Title VII retaliation claim based on her claimed protected activity that involved complaints of unspecified "discriminatory behaviors."

### Conclusion

For all these reasons, Apache respectfully requests the Court grant summary judgment in Apache's favor and dismiss all of Plaintiff's causes of action.

DATED: December 19, 2025                     Respectfully submitted,

**HICKS THOMAS LLP**
A Registered Limited Liability Partnership

By:    /s/ Stewart Hoffer
      **Stewart Hoffer (Attorney in Charge)**
      SDTX No. 20123
      Texas Bar No. 00790891
      shoffer@hicks-thomas.com
      **Chaim "Kai" Mindick**
      SDTX No. 3938991
      Texas Bar No. 24133963
      kmindick@hicks-thomas.com
      700 Louisiana Street, Suite 2300
      Houston, Texas 77002
      Telephone: (713) 547-9100
      Facsimile: (713) 547-9150

**Attorneys for Defendants Apache Corporation and APA Corporation**

## <u>Certificate of Service</u>

I hereby certify that on December 19, 2025, the foregoing motion was served on all counsel of record, as listed below, via the Court's ECF noticing system.

Ms. Belashia S. Wallace
The Wallace Law Firm PLLC
363 N. Sam Houston Parkway E, Suite 1400
Houston, Texas 77060
*service@thewallacelaw.com*

*/s/ Stewart Hoffer*
**Stewart Hoffer**