United States District Court
Southern District of Texas
**ENTERED**
March 16, 2026
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| AMUNIQUE LOVE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:24-CV-00598 |
| | § | |
| APACHE CORPORATION AND APA CORPORATION, | § § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

### I.   INTRODUCTION

Before the Court are motions for summary judgment filed by Apache Corporation ("Apache") (Dkt. No. 89) and APA Corporation ("APA") (Dkt. No. 90) (collectively, "the defendants"), brought under Fed. R. Civ. P. 56 of the Federal Rules of Civil Procedure, seeking dismissal of all claims filed by the plaintiff, Amunique Love ("Love"). Love alleges race or color discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"); disability discrimination and failure to accommodate under the Americans with Disabilities Act ("ADA"); and Title VII retaliation for engaging in a protected activity. Love responded by opposing both motions (Dkt. Nos. 91 and 92). APA replied (Dkt. No. 95), and Apache also replied (Dkt. No. 97). After a careful review of the motions, issues, pleadings, responses, relevant exhibits, and applicable laws, the Court concludes that defendants' motions for summary judgment should be denied.

### II.   FACTUAL AND PROCEDURAL BACKGROUND

The factual allegations summarize the complaint, pleadings, affidavits, and evidence. The lawsuit arises from Love's allegations against her former employer, Apache, and its holding

company, APA.

Love is an African American woman with dark skin, diagnosed with ADHD in September 2017, and undergoing treatment when hired on March 21, 2022. The defendants dispute her ADHD, citing a form where Love indicated "no disability." She was hired as the "Supplier Diversity Lead" to oversee Apache's Diversity, Equity, and Inclusion (DE&I) initiatives. It is disputed whether the defendants were jointly Love's employer; APA claims it was only Apache's holding company and did not employ Love or any accused individuals.

It is disputed when Love first requested reasonable accommodations. Love claims she made the request on March 25, 2022, to her supervisor, Brenda Udunna. The defendants argue that it was May 9, 2022. Love's deposition indicates she requested a translation or a read-aloud feature, or a comparable alternative available through Google Chrome. Udunna told Love to submit the request to the Information Technology department ("I.T."), which was received by Jonathan Jenkins. It is undisputed that Jenkins denied Love's request on March 28, 2022, without offering any alternatives.

In her deposition, Veronica Cotton, Human Resources Partner ("Cotton" or "HR"), testified about the interaction between Love and Jenkins, indicating that he denied Love's accommodation request, shouted at her, asking, "Do you even have a disability?" in front of others. Love reported this to Udunna and Cotton on May 18, 2022. Cotton offered to escalate, but Love declined, asking other IT staff to handle future concerns. Cotton testified that Jenkins later apologized to Love during a private conversation. Love considered the apology and his subsequent responses as microaggressions, harassment, and retaliation.

During Love's twelve months, from March 21, 2022, to March 31, 2023, she repeatedly requested reasonable accommodations for her ADHD. Despite assurances from HR and management, none were implemented before her termination. Management knew her

accommodations were not provided, but still assigned her to lead a vital DE&I initiative, tied to bonuses. Love worked extra hours beyond what accommodations would allow and completed the initiative, but claims her disability was marginalized, ridiculed, and disregarded by management.

An ongoing dispute questions whether certain comments and actions by some defendants' management members amount to racial discrimination or are simply isolated, minor references to popular culture that are neither severe nor pervasive. Love testified that Sara Robicheaux, a Caucasian woman, and her supervisor were involved. On August 26, 2022, Love overheard Robicheaux, Rachel Adams, and other Caucasian supervisors mock Love's "dark skin tone," with Adams congratulating Robicheaux on "moving to the dark side," and noting that "Love and Udunna [were] the two dark-skinned Black women in the area." The defendants argued these remarks were not slurs and were overheard by Love rather than directed at her. Love reported these incidents to HR.

Love testified about other instances of racial discrimination from September 2022 to March 2023, including Robicheaux quoting hip-hop lyrics and asking if she understood it better that way. She mentioned advice from non-Black senior colleagues not to discuss DE&I publicly and unsolicited calls from a Caucasian coworker about attending a Black Professionals event. The defendants claimed these were merely cultural references, but Love disagreed and reported these incidents to HR monthly.

Love believes Robicheaux retaliated against her for reporting her racial comments to HR. As Love's supervisor, Love was required to report to Robicheaux that some employees were not logging RFx events over $100,000, which she believed violated federal regulations. It is disputed whether Robicheaux told Love not to report the issue to the audit department. Love contends that afterward, Robicheaux began assigning her unrelated DE&I tasks. She testified that these included analyzing

foreign-language communications she could not speak and contacting hundreds of people from a listserv that included fictitious contacts. She states these tasks were more difficult due to her disability, lack of support, and not having the requested accommodations. She reported these incidents to HR.

Love met with HR multiple times from January 2023 to March 2023 over claims of race and disability discrimination and federal reporting irregularities. Robicheaux told her not to report these issues. HR stated that investigations were ongoing and near completion. On March 9, 2023, HR believed that reasonable accommodations were being addressed, as the company allowed Love to access resources on her personal devices. Love disputes that her accommodations were adequately handled. On March 30, 2023, she submitted her final DE&I report, including RFx logging events. On March 31, 2023, Love was terminated at Robicheaux's request, despite no prior disciplinary actions.

During her termination on March 31, 2023, Love was offered a Settlement Agreement with a financial settlement and continued medical benefits in exchange for waiving rights and confidentiality. She declined to sign and requested an extension of benefits without signing, which was denied. After termination, the Defendants continued pressuring her to sign. Later, a non-Black, non-disabled woman replaced her. The defendants claim that opposing alleged false reporting is not protected under Title VII and that Love's termination was due to legitimate, non-discriminatory, performance-related reasons.

On November 7, 2023, Love filed an Equal Employment Opportunity Commission ("EEOC") charge against the defendants, claiming discrimination based on race or color under Title VII, disability discrimination under the ADA, and retaliation under Title VII. The EEOC dismissed her charge on November 29, 2023, informing her of the "Right-to-Sue" notice within ninety days.

Love started litigation on February 21, 2024. The defendants moved to dismiss, and Love amended her complaint, responding on April 4, 2024. They filed a joint answer on April 26, 2024. The defendants filed motions for summary judgment on December 19, 2025. Love contests APA's claim of untimeliness and failure to exhaust remedies, and argues APA's "identity-of-interest" defense is invalid. She responded to summary judgment motions on January 9, 2026, with APA replying on January 16, 2026, and Apache on January 20, 2026.

### III. APPLICABLE LEGAL STANDARD (Summary Judgment)

Summary judgment is appropriate when the pleadings, discovery, and disclosure materials on file, and any affidavits show that "there is no genuine [dispute] as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994) (en banc). The movant must first inform the Court of the basis for the motion and identify record portions showing the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323; *Martinez v. Schlumberger, Ltd.*, 338 F.3d 407, 411 (5th Cir. 2003).

At summary judgment, the court examines whether the evidence, viewed favorably to the non-moving party, shows a genuine issue of material fact. *Anderson*, 477 U.S. 242. A judge cannot weigh evidence or assess credibility to prevent premature resolution of a dispute and preserve the right to a trial when factual disputes exist. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005); *Carantzas v. Iowa Mut. Ins. Co.*, 235 F.2d 193 (5th Cir. 1956).

### IV. DISCUSSION AND ANALYSIS

#### A. Race or color Discrimination (Title VII)

Title VII prohibits employers from discriminating against employees based on race or color. 42 U.S.C.S. § 2000e-2 (LexisNexis); *Boyd v. State Farm Ins.*, 158 F.3d 326 (5th Cir. 1998). To

prevail in a race or color discrimination claim under Title VII, the plaintiff must demonstrate a prima facie case showing that she "is a member of a protected class; is qualified; experienced an adverse employment decision; and was replaced by someone outside of the protected class or he was treated less favorably than employees outside of the protected class." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993); *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133 (2000).

Claims relying on circumstantial evidence are evaluated using the McDonnell Douglas burden-shifting framework. Once a prima facie case is established, the employer must justify the adverse action with a legitimate, non-discriminatory reason. *See McInnis v. Alamo Cmty. Coll. Dist.*, 207 F.3d 276 (5th Cir. 2000). The employee must then demonstrate that the employer's reason is pretextual. *See Boyd*, 158 F.3d 326.

In this case, Plaintiff Love claims that, as an African-American woman with dark skin, she regularly faced race-related insults from management and coworkers, creating a hostile work environment. She asserts that management knew about this hostile environment, created it, and failed to take appropriate corrective action.

There are alleged conflicts between the defendants' initial evidence and later explanations, which Love argues indicate pretext. Evidence that an employer is allegedly untruthful about the reasons for an adverse employment action allows a "fact-finder to infer discriminatory intent and prevents summary judgment." *Dillard v. City of Austin*, 837 F.3d 557, 559 (5th Cir. 2016). The Fifth Circuit has also held that summary judgment is inappropriate when the plaintiff establishes a prima facie case and provides enough evidence that could lead a reasonable jury to doubt the employer's stated reason for discharge. *Laxton v. Gap Inc.,* 333 F.3d 572, 578-579 (5th Cir. 2003).

Here, the evidence is disputed concerning whether management and coworkers repeatedly

made race-related comments and insults, and whether the defendants' failure to act was justified. Additionally, there are inconsistencies in the defendants' explanations about the race-coded incidents, leading to a genuine dispute regarding intent or pretext concerning race or color discrimination. "Conflicting evidence," and "complex issues" of intent, credibility, and pretext, make summary judgment inappropriate on Love's race or color discrimination claim. *EEOC v. Mod. Grp., Ltd.*, 725 F. Supp. 3d 577 (E.D. Tex. 2024). Therefore, the Court denies the defendants' motions for summary judgment on Love's race or color discrimination claim.

### B. Disability Discrimination and Failure to Accommodate (ADA)

The ADA prohibits discrimination against qualified individuals with disabilities and requires employers to provide reasonable accommodations. 42 U.S.C.S. § 12102; *Austin v. City of Pasadena*, 74 F.4th 312 (5th Cir. 2023). For a plaintiff to succeed on a disability discrimination claim under the "failure to accommodate" theory, she must establish that she "is a qualified individual with a disability; the covered employer knew of the disability and its consequential limitations; and the employer failed to make reasonable accommodations for such known limitations." *Neely v. PSEG Tex., Ltd. P'ship*, 735 F.3d 242, 247 (5th Cir. 2013).

An employer must provide reasonable accommodations for an employee's known needs or disabilities, *Griffin v. UPS*, 661 F.3d 216, 224 (5th Cir. 2011), unless the employer proves that providing the accommodation would impose an undue hardship on the business. *See Riel v. Elec. Data Sys. Corp.*, 99 F.3d 678, 681–82 (5th Cir. 1996).

There is a dispute concerning "when" Love informed the defendants about her ADHD, not whether she was diagnosed with ADHD. It is undisputed that for twelve months, Love requested reasonable accommodations that were never provided, nor were any alternatives offered. The defendants do not point the Court to any evidence that by providing reasonable accommodations it

**7/12**

would "cause undue hardship." Love disputes the defendants' claim that she acknowledged receiving accommodations.

The Fifth Circuit has held that whether an individual is disabled under the ADA is a complex, "fact-intensive" issue for a reasonable jury to resolve factual disputes where "conflicting evidence" exists. *Mod. Grp., Ltd.*, 725 F. Supp. 3d 577. Love's evidence of repeated requests, unresolved issues, and the employer's failure to engage in good faith in the interactive process creates a genuine dispute of material fact. Moreover, there are "discrepancies and inconsistencies" in the evidence regarding the defendants' awareness of Love's ADHD and their claim that they provided the accommodations she requested. *Dillard*, 837 F.3d at 559.

The Court finds that a genuine dispute exists over whether the defendants discriminated on the basis of disability, failed to accommodate, provided adequate accommodations, engaged in pervasive or severe conduct, or acted with pretext. This "fact-intensive" inquiry makes summary judgment inappropriate. *Id.* Accordingly, the Court denies the defendants' motions for summary judgment on Love's disability and failure to accommodate claims.

### C. Hostile Work Environment (Title VII and ADA)

A hostile work environment claim requires a showing that the conduct was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment. *Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435 (5th Cir. 2011). The severity required varies inversely with the frequency of conduct, and the conduct must be evaluated collectively and in context. *Id.* Management's knowledge and failure to act are relevant to employer liability. *Id.*

In these facts, Love asserts that she faced coded comments, insults, harassment, heavy workloads, and denial of accommodations due to her race and disability from management and coworkers. The Court finds that the evidence shows management was aware and may have failed to

take appropriate corrective action. Love argues that the conduct of management and her coworkers was both "objectively and subjectively offensive" and "significantly disrupted her work." The Fifth Circuit has held that a "series of minor incidents" can add up to a valid claim, emphasizing the importance of considering their cumulative effect. If Love's evidence is accepted, it could demonstrate that her work environment was hostile, that the defendants were aware, and that they failed to take proper action to prevent or address the discrimination.

Consequently, when considering the evidence in the light most favorable to Love, the Court finds a genuine dispute of material fact regarding the severity, frequency, and impact of the alleged conduct, precluding summary judgment on the hostile work environment claim. *Anderson*, 477 U.S. 242. Therefore, the Court denies the defendants' motions for summary judgment on Love's hostile work environment claim.

### D. Retaliation (Title VII)

Title VII prohibits retaliation against employees who oppose unlawful practices or participate in investigations. 42 U.S.C. § 2000e-3(a); *Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571 (5th Cir. 2020), *Feist v. Louisiana*, 730 F.3d 450 (5th Cir. 2013). For a plaintiff to succeed on a retaliation claim under Title VII, she must present facts that there was "participation in protected activity, an adverse employment action was taken against her, and a causal connection between the two." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013); *Zamora v. City of Hous.*, 798 F.3d 326, 331 (5th Cir. 2015). The McDonnell Douglas burden-shifting framework applies. *McDonnell Douglas Corp.*, 411 U.S. 792.

The employer must then provide a legitimate, non-discriminatory reason for the adverse employment action; afterward, the burden shifts to the plaintiff to demonstrate pretext. If the employer presents a valid, non-retaliatory reason, the employee must then prove pretext by showing

that the adverse employment action would not have occurred but for the protected activity. *Univ. of Tex. Sw. Med. Ctr.*, 570 U.S. at 362; *Feist*, 730 F.3d at 454–55. Temporal proximity alone is insufficient to establish but-for causation at summary judgment. *DeHart v. Baker Hughes Oilfield Operations*, 214 F. App'x 437, 443 (5th Cir. 2007). For retaliation, the plaintiff must show that the decision-maker knew about the protected activity at the time of the adverse [employment] action. *Medina v. Ramsey Steel Co.*, 238 F.3d 674 (5th Cir. 2001).

In this case, the defendants challenge Love's summary judgment evidence, which indicates she engaged in protected activity by repeatedly filing complaints with her supervisor and HR about discrimination and retaliation during her year of employment.

The defendants argue that Love was terminated due to "missed deadlines," "inaccurate data," "non-responsiveness," "others completing her work," "unmet role expectations," and "reallocation of specific projects" over concerns about quality and timeliness. Love responds by asserting she faced no "disciplinary actions" during her employment prior to termination and highlights the defendants' inconsistencies in the summary judgment evidence. Furthermore, Love's evidence of the defendants' awareness of her protected activity, the close timing of her termination, and the disputed reasons they provided for her termination create a genuine issue of material fact. The Fifth Circuit requires evidence of a conflict in "substantial evidence"—specifically, whether the employer "would not have taken the action but for the protected activity"—to deny summary judgment. *See Brown*, 969 F.3d 571; *Feist*, 730 F.3d 450.

When viewing the evidence in the light most favorable to Love, the Court finds that a genuine dispute exists regarding whether Love engaged in protected activity; whether the defendants were aware of her protected activity; and whether the defendants retaliated against her because of her protected activity. *Anderson*, 477 U.S. 242. "Conflicting evidence," and complex issues of intent,

credibility, and pretext, make summary judgment inappropriate on Love's retaliation discrimination claim. *Mod. Grp., Ltd.*, 725 F. Supp. 3d 577. Therefore, the Court denies the defendants' motions for summary judgment on Love's retaliation claim.

### E. Exhaustion of Remedies & Identity-of-Interest Doctrine

APA asserted the defenses of "exhaustion of administrative remedies" and the "identity-of-interest" doctrine as grounds for summary judgment. The Fifth Circuit has consistently rejected a strict, formalistic approach that insists a plaintiff file a separate EEOC charge against each legally related entity, as long as the objectives of exhaustion—such as providing notice and the opportunity for conciliation—are met. *McClain v. Lufkin Indus.*, 519 F.3d 264 (5th Cir. 2008); *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481–82 (5th Cir. 2014).

The "identity-of-interest doctrine" states that a "separate charge" is "not required" if the respondent had "actual notice and an opportunity to participate in conciliation," and if they "share legal interests." *Id.* at 482; *id.* at 273.

The Court finds "conflicting evidence" and "unresolved factual disputes" regarding whether Love exhausted administrative remedies or whether the "identity-of-interest doctrine" applies. *Mod. Grp., Ltd.*, 725 F. Supp. 3d 577. Therefore, summary judgment cannot be granted as a matter of law. *See Exxon Mobil Corp.*, 252 S.W.3d 496; *Dillard*, 837 F.3d at 559.

## VI. CONCLUSION

"All facts and evidence must be viewed in the light most favorable" to Love, and "a genuine dispute of material fact exists if a reasonable jury could return a verdict" in her favor. *Thomas v. Tregre*, 913 F.3d 458 (5th Cir. 2019). The Court finds that Love has provided sufficient evidence to establish a prima facie case on each of her claims. Consequently, summary judgment is inappropriate as a matter of law. *See Anderson*, 477 U.S. at 248; *Celotex Corp.*, 477 U.S. at 322–23. Additionally,

Fifth Circuit precedents instruct against summary judgment due to "conflicting evidence," "complex issues," and "fact-intensive" inquiries. *See EEOC v. Mod. Grp., Ltd.*, 725 F. Supp. 3d 577 (2024).

It is **ORDERED** that the defendants' motions for summary judgment are **DENIED** as to all of Love's claims.

It is so **ORDERED**.

SIGNED on March 16, 2026, at Houston, Texas.

_____
Kenneth M. Hoyt
United States District Judge